STATE OF NORTH CAROLINA on Relation of JOHN RANDOLPH INGRAM, COMMISSIONER OF INSURANCE OF NORTH CAROLINA, Rehabilitator v. ALL AMERICAN ASSURANCE COMPANY, Respondent and AMERICAN BANK AND TRUST COMPANY, Intervenor Respondent.

No. 7726SC13

(Filed 7 December 1977)

1. **Insurance § 1— rehabilitation of insurance company—recognition of legal counsel—direction to continue legal representation**
    In proceedings under G.S. 58-155.2 *et seq.* to rehabilitate an insurance company because of threatened insolvency, the trial court properly exercised its broad supervisory power to assure continued and stable legal representation for the insurance company during a period of discord between its officers and directors when it issued an order recognizing a law firm as counsel for the insurance company and directed that such counsel continue to represent the company in certain actions pending in other states.

2. **Insurance § 1— rehabilitation of insurance company—determination that law firm not replaced as counsel**
    In proceedings to rehabilitate an insurance company, the trial court in the exercise of its supervisory power had the authority to determine that a law

firm had not been effectively replaced as counsel of record for the insurance company and that such counsel continued to represent the company during the rehabilitation.

3. Insurance § 1— rehabilitation of insurance company—reasonable counsel fees—authority of court

The trial court had the authority to order an insurance company undergoing rehabilitation because of threatened insolvency to pay fair and reasonable attorney's fees and expenses to its counsel of record for services rendered in the rehabilitation proceedings.

RESPONDENT appeals from *Martin, Judge*. Order filed 25 August 1976 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 27 September 1977.

Pursuant to G.S. 58-155.2 *et seq.* the State Commissioner of Insurance filed petition alleging insolvency, and the All American Assurance Company was placed in involuntary rehabilitation by order of the superior court on 4 November 1975. "AAA" is a stock company incorporated under the laws of North Carolina with its home office in Charlotte, North Carolina, and its administrative office in Baton Rouge, Louisiana. It is engaged in the writing of life, accident, and health insurance in North Carolina and other states. On 6 November 1975 the then president of "AAA" requested petitioner law firm to appear for it in the first rehabilitation hearing, not to "protest or advocate the move [rehabilitation]," but "to endeavor to clarify whether or not the Company is insolvent as alleged in the partition [*sic*]." On 7 November petitioner filed with the court its "authority" to represent "AAA," a unanimous resolution of the Board of Directors dated 30 July 1975, which resolution appointed petitioner "to advise and assist the Company at the direction of the President," particularly during the "pending examination of the Company by the North Carolina Department [of Insurance]." Petitioner asked the court to order it confirmed in continued representation of "AAA," "provided it is lawful for the Company to have legal representation." The court so ordered on 7 November 1975.

Commissioner Ingram, in a meeting with "AAA's" Board of Directors on 8 October 1975, advised against the employment of either the petitioner law firm or the Louisiana firm of one of "AAA's" Board of Directors because of factionalism, but he made no move as Rehabilitator to have petitioner removed. On 31 October 1975 petitioner wrote the President of "AAA" that it

understood there was to be a "takeover" of "AAA" and that the new executive board would probably wish its own counsel, that "it is in order to ask the Board of Directors to rescind the July 30, 1975 resolution appointing us special counsel. . . ." Formal takeover was unsuccessful, but subsequently, the Executive Committee in a meeting on 8 November 1975, attempted to appoint E. Eugene Palmer of Austin, Texas, as special counsel. On 13 November 1975 the Secretary of "AAA" alleged that a telephone conference produced a unanimous vote of the Board of Directors adopting the 8 November resolution, but both the President and Senior Vice President denied any knowledge of the conference. Peter A. Foley orally petitioned the court that he and Palmer be recognized as "AAA's" counsel replacing petitioner, but the court in its order of 14 November 1975 found that petitioner was still the duly *designated* attorney for "AAA" and, in addition, "that all fees of said attorneys shall be subject to the approval of this court." The court order of 18 November 1975 reaffirming rehabilitation continued petitioner's representation, subject to certain specified conditions. Notices of appeal from both of these orders were filed in apt time, purportedly by "AAA," but on 5 December 1975 motion was filed to withdraw the notices of appeal. By order of the same date the court allowed the motion, finding that the notices of appeal were not made by "AAA," but by Republic Securities Corporation (a holding company which apparently then owned a controlling interest in "AAA").

On 4 December 1975 petitioner requested that the court approve a statement of "services rendered and advances made on behalf of Respondent," and for "a reasonable allowance of counsel fees. . . ." The court carefully considered petitioner's work and found it "to be of extreme importance to the Company and in the best interests of the Company, its policyholders, shareholders, creditors and the public. . . ." The court then awarded $30,034.50 to petitioner to be paid by the Rehabilitator out of "AAA's" assets. No appeal was taken to this order.

On 16 April 1976 American Bank and Trust of Baton Rouge, Louisiana, a "person" interested in the proceeding, moved the court to terminate rehabilitation pursuant to G.S. 58-155.3. At hearing on 23 April 1976 the court, determining that Bank was not yet a party to the action, continued the hearing. On the same day Bank properly moved to intervene. On 26 April its motion

was reconsidered, and the Rehabilitator joined in moving that rehabilitation be terminated. Petitioner sent a letter to the Rehabilitator and to counsel of American Bank asking for more information before agreeing to intervention and termination, and on 28 April successfully petitioned the court to hold a full hearing.

At the hearing on 7 May 1976 it appears from the evidence that American Bank, holder of a note made by Republic Securities Corp., and secured by 1,011,610 shares of "AAA" stock, 64% of the outstanding stock, was now the unconditional owner of the stock. The court allowed the motion of American Bank to intervene.

Other evidence at the hearing tended to show that petitioner, assisted by an attorney in Baton Rouge, Louisiana, had recovered some $7,000,000 worth of bonds which a prospective purchaser had removed from "AAA."

Further, at the hearing, evidence (not relevant to this appeal) was offered relative to the financial condition of "AAA" and the efforts made by the rehabilitator of "AAA" to recover assets and to relieve the company of disadvantageous commitments. "AAA" had about $1,613,000 cash on hand, and had total common stock, surplus, and retained earnings of about $31,300,000.

By order dated 7 May 1976 (filed 10 June 1976) the court found that American Bank had agreed to contribute additional funds to "AAA" so as to maintain its statutory capital and surplus at no less than $2,500,000 through 31 December 1976. The court terminated rehabilitation as of 7 May 1976, but not the lawsuit, and directed that "AAA" operate subject to certain conditions set forth in the order.

By letter of 10 June 1976, petitioner wrote to "AAA" offering to continue its representation and requesting a letter confirming the appointment. "AAA" replied on 16 June that it would retain local counsel in the future and expressed its appreciation for the legal services rendered by petitioner. Thereafter, petitioner wrote "wind-up" letters on 17, 18, 21, and 30 June relating to "AAA" matters.

On 1 July 1976 petitioner applied to the court for counsel fees (total $9,889.50) for services provided from 1 May 1976 through 30 June 1976, for advances totaling $973.77, and for

authorization of payments for legal services rendered by California attorneys ($810.00 fee) and for $776.37 for expenses from 18 August 1975 to 18 June 1976, all of which services "have been required by their [petitioner's] continued representation of Respondent in rehabilitation and have been rendered pursuant to the guidance and direction of this Court. . . ." The petition was supported by a detailed statement. The Commissioner/Rehabilitator was served notice of hearing on 1 July 1976. On 15 July the court wrote to the Commissioner, sending a copy to "AAA's" new counsel, asking for objections to the request for fees. The Rehabilitator objected to the award of fees for services rendered subsequent to 7 May 1976. "AAA's" home counsel made no response, submitting no objections.

On 25 August 1976 the court filed its order finding that petitioner, and the California firm employed by petitioner, had rendered valuable legal services to "AAA," directing it to pay petitioner $9,389.50 and the California firm a fee of $810.00, and expenses of $776.37. The court concluded that the order was entered pursuant to its Order of 25 November 1975. Respondent "AAA" appealed.

*Cansler, Lockhart, Parker & Young by Thomas Ashe Lockhart, Joe C. Young and Winford R. Deaton, Jr., for petitioner appellee.*

*Robert O. Klepfer, Jr. and Arthur A. Vreeland for respondent appellant.*

CLARK, Judge.

[3] This appeal raises the single issue of whether the trial court had the authority to order respondent "AAA" to pay attorney's fees and expenses to petitioner, counsel of record for "AAA," for services rendered in rehabilitation proceedings under G.S. 58-155.2 *et seq.*

Rehabilitation for insurance companies threatened by insolvency under G.S. 58-155.2 *et seq.* is a purely statutory procedure. The statutes confer no specific power upon the superior court to appoint counsel for the insurer or to award counsel fees to an attorney for the insurer during rehabilitation. The applicable statutes are clear as to purpose, nebulous as to procedure and generally silent as to powers of the court in accomplishing

the purpose of rehabilitation. The control of the insurer company is transferred to the Commissioner as rehabilitator, but if the power of the court in rehabilitation is narrowly limited by a literal interpretation of the statutes, the objective of receiving and protecting the insurer, its creditors, the insured and the public could not be accomplished. The court must have broad supervisory power in order to deal effectively with the many and varied situations that are likely to arise in rehabilitation proceedings. 25 N.C.L.R. 429, 430 (1947). The statutory language reflects this purpose and the need for judicial supervision over the rehabilitation proceedings, and guides us in determining the authority of the court.

Statutory reorganizations are generally considered to be deliberately informal and to give to the trial court both supervisory and initiative powers of the broadest sort, while giving to the Commissioner only those powers *specified* in the statutes. It is also generally held that in a case of conflict of opinion the trial court may overrule the Commissioner. 19 Appleton, Insurance Law and Practice, § 11041, pp. 616, *et seq.*; *National Bondholders Corporation v. Joyce*, 276 N.Y. 92, 11 N.E. 2d 552 (1937); *In re Casualty Co. of America*, 244 N.Y. 443, 155 N.E. 735 (1927). North Carolina cases decided before the enactment of the statutory proceedings generally held that the commissioners appointed in court-supervised equitable reorganizations were mere ministerial officers of the court, that the court had the final discretionary authority. *Harrison v. Brown*, 222 N.C. 610, 24 S.E. 2d 470 (1943); *Blades v. Hood, Comr. of Banks*, 203 N.C. 56, 164 S.E. 828 (1932); *Charles Skinner v. D. G. Maxwell*, 66 N.C. 45 (1872). No cases on the issue of court power have been decided under the new statute.

Under the statute the Commissioner as rehabilitator has discretionary as well as ministerial powers. Clearly also the court has broad supervisory powers and must also be held to have broad initiative powers as well so as to effect the mandate of such provisions as G.S. 58-155.18 which directs the court after full hearing to deny or grant the application for rehabilitation "together with such other relief as the nature of the case and the interests of policyholders, creditors, stockholders, members, subscribers or the public may require." The court is the final protector of those interests most jeopardized by an insurance com-

pany's financial instability, and we see no reason to assume that the broad mandate above quoted does not cover the court's actions in the instant case.

[1] Though both the petitioner and respondent "AAA" argue the question of whether the court had authority to appoint counsel for "AAA," we do not find it necessary to determine this question, because it does not appear from the record on appeal that the court appointed counsel for "AAA." It is clear that petitioner was employed by "AAA" on 6 November 1975 to represent the company in the rehabilitation proceedings. By its order of 7 November the court recognized that petitioner was counsel of record and that "AAA" was entitled to have such representation. Thereafter "AAA" was in rehabilitation with much of the power of its officers and directors transferred under the statutes to the rehabilitator. Further, it is clear from the record on appeal that the financial difficulties which led to the rehabilitation were the result of a dangerously unstable power structure, complicated by a struggle to acquire control by some directors with apparent conflicts of interest. Though some effort was made by the executive committee and the directors of "AAA" to discharge petitioner in November 1975, without the knowledge or approval of its President and Senior Vice President, the legality of such effort was highly questionable. The court found, in its order of 14 November 1975, that petitioner "is the *duly designated attorney* for Respondent. . . . in this proceeding and that all fees of said attorneys shall be subject to the approval of this court." [Emphasis added.] We do not construe this finding to mean that the court was appointing petitioner as counsel for respondent; rather, we find it to be a recognition that the petitioner was not lawfully replaced but remained the attorney of record for "AAA." In its order of 18 November 1975 the court again recognized petitioner as counsel for "AAA," and directed that petitioner continue to represent "AAA" in certain actions pending in other states. In so doing, the trial court properly exercised its broad supervisory power to assure continued and stable legal representation for "AAA" during a period when there was instability and discord between its officers and directors.

[2] The trial court by order entered 4 December 1975 found that petitioner had rendered legal services for "AAA" during the period from 1 October 1975 through 18 November 1975, that

$30,034.50 was reasonable compensation for legal services and $3,411.53 for expenses advanced, and it was ordered that the rehabilitator pay these sums to petitioner. "AAA" has never excepted to this order. Both parties admit in briefs that petitioner was awarded attorney's fees on several occasions by the court, though not documented in the record, for services rendered during the period from 18 November 1975 through 30 April 1976. It does not appear that respondent excepted to and appealed from any of these orders. We conclude that the evidence and circumstances supported the finding of the trial court that petitioner had not been effectively replaced as counsel of record for "AAA," that petitioner continued so to represent "AAA" during the rehabilitation, and that the court in the exercise of its supervisory power had the authority to make this determination.

Respondents argue further that this determination had the effect of forcing "AAA" to be represented by counsel that was hostile to the Board of Directors and the Company executives and that petitioner was really representing the court and not the company. But the "Company" contemplated by the rehabilitation proceedings is far more inclusive than the Board of Directors or the executives. Concern is specifically to be given to the policyholders, creditors, stockholders, members and subscribers. "AAA" was placed under involuntary rehabilitation because of threatened insolvency, but it appears from the record that this condition, at least in part, was the result of a dangerously unstable power structure. The court's recognition of petitioner as "AAA's" legal representative throughout the proceedings required that petitioner represent the *entire* company, which requirement resulted in a conflict with some of the Board of Directors. But those directors' interests were in apparent conflict with the interests of the rest of the company.

Did the trial court have authority to order that "AAA" pay its attorney of record (petitioner) the attorney's fees and expenses for the period from 1 May through 30 June 1976? Ordinarily, attorney's fees are not recoverable as an item of damage or as part of the costs of litigation, except as provided for by statute. *Hoskins v. Hoskins*, 259 N.C. 704, 131 S.E. 2d 326 (1963); 1 Strong's N.C. Index, 3d, Attorneys at Law, § 7. North Carolina has applied a rule of equity exception in various classes of cases, *i.e.*, where a litigant at his own expense has maintained a suc-

cessful suit for the preservation, protection or increase of a common fund or of common property. *Horner v. Chamber of Commerce*, 236 N.C. 96, 72 S.E. 2d 21 (1952). In *Horner*, the court stated that the equity exception rests, not upon the theory that the allowance is for attorney's fees as such or as an element of court costs, but rather upon the principle of approval by the court, in the exercise of chancery powers, of expenditures reasonably incurred in creating or preserving the fund or property. 236 N.C. at 98, 72 S.E. 2d at 22.

The general rule against the award of attorney's fees is based on the policy that such awards would encourage attorneys to institute meritless litigation. The policy is not applicable to the case *sub judice*. Petitioner was employed by "AAA" during the rehabilitation in question and, by letter of 16 June 1976, "AAA" expressed its appreciation to petitioner for the legal services rendered. Their relationship was not adversarial, but was rather an attorney-client relationship in which petitioner was entitled to compensation for legal services rendered. In rehabilitation, the insurer's business is operated by the rehabilitator under court supervision until the threat of insolvency is removed. The settlement of an outstanding debt by the rehabilitator is clearly a step "toward removal of the causes and conditions which have made rehabilitation necessary as the court may direct." G.S. 58-155.3(a). And it seems clear that the insurer is to bear the costs of rehabilitation, which costs are to be assessed directly against it in the rehabilitation suit itself. For example, G.S. 58-155.11(f) gives to the rehabilitator the power to appoint special counsel and to collect his fees directly out of the insurer's funds, subject, of course, to the approval of the court.

[3] We conclude that the supervisory power of the court in this rehabilitation suit included the authority to order that "AAA" pay fair and reasonable compensation to petitioner for legal services rendered. There was sufficient evidence to support the court's finding that the award to petitioner and to the California firm employed by petitioner was fair and reasonable.

Affirmed.

Judges MORRIS and VAUGHN concur.