STATE OF NORTH CAROLINA, ON RELATION OF JAMES E. LONG, COMMISSIONER OF INSURANCE OF NORTH CAROLINA, Plaintiff-Appellee v. INTERSTATE CASUALTY INSURANCE COMPANY, Defendant v. NORTH CAROLINA INSURANCE GUARANTY ASSOCIATION, Defendant-Intervenor

No. COA95-38

(Filed 21 November 1995)

**1. Contracts § 118 (NCI4th)— attorneys' claims for breach of agreement—attorneys not third-party beneficiaries**

The trial court properly dismissed attorneys' claim for breach of an agreement between the Department of Insurance and Interstate Insurance Company since attorneys were not parties to the agreement nor were they third-party beneficiaries, as the agreement was a voluntary supervision agreement; the attorneys represented insureds of Interstate prior to the delinquency proceeding; the agreement did not specifically mention attorneys; and the attorneys were not specifically contemplated by Interstate or the Commissioner as beneficiaries of the agreement.

**Am Jur 2d, Contracts §§ 426, 435 et seq.**

2. **Insurance § 37 (NCI4th)— attorneys' representation of insureds—claims assigned Class 5 priority—no application of common fund doctrine**

In a liquidation proceeding where attorneys who had represented Interstate's insureds sought reimbursement, the comprehensive nature of N.C.G.S. § 58-30-220 precluded the application of any equitable doctrine, including the common fund doctrine, to alter the Class 5 priority assigned to attorneys' claims.

**Am Jur 2d, Insurance §§ 98 et seq.**

3. **Insurance § 37 (NCI4th)— attorneys' representations of insureds—no conservation or administration of assets— claims not entitled to Class 1 priority**

Claims of attorneys who represented Interstate's insureds were not "costs for administration or conservation of assets of the insurer" entitled to Class 1 priority since Class 1 priority is awarded only to entities which conserve or administer assets of the insurer *after* the items have become part of the "insurer's estate," and no estate existed when the attorneys' claims arose.

**Am Jur 2d, Insurance §§ 98 et seq.**

4. **Insurance § 37 (NCI4th)— collection of files prior to liquidation—no conservation or administration of assets— claims not entitled to Class 1 priority**

Collection of files by Eastern Appraisal Services did not amount to conservation or administration of the assets after the establishment of the "insurer's estate," so that Eastern's claim was not entitled to Class 1 priority.

**Am Jur 2d, Insurance §§ 98 et seq.**

Appeal by petitioners from order entered 3 October 1994 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 5 October 1995.

*Poyner and Spruill, L.L.P, by Benjamin P. Dean and James T. Cheatham, for petitioner-appellant Attorney-Claimants.*

*Yeargan, Thompson & Mitchiner, by W. Hugh Thompson, for petitioner-appellant Eastern Appraisal Services, Inc.*

*Attorney General Michael F. Easley, by Assistant Attorney General Sue Y. Little and Special Deputy Attorney General*

STATE EX REL. LONG v. INTERSTATE CASUALTY INS. CO.

[120 N.C. App. 743 (1995)]

*Thomas D. Zweigart, for plaintiff-appellee State of North Carolina.*

*Moore & Van Allen, PLLC, by Christopher J. Blake, for defendant-intervenor North Carolina Insurance Guaranty Association.*

MARTIN, MARK D., Judge.

Petitioners, Attorney-Claimants (Attorneys) and Eastern Appraisal Services Incorporated (Eastern), appeal from order entered by the trial court affirming the Liquidator's Report and Recommendation. We affirm.

On 16 December 1989, Interstate Casualty Insurance Company (Interstate) and Commissioner of Insurance James E. Long (Commissioner) agreed to a voluntary supervision agreement (Agreement). The Agreement provides, in pertinent part:

2. [Interstate] will continue to conduct operations in the normal course of business during the pendency of the examination, under the supervision of a representative of the Department [of Insurance]. . . . Such supervision shall be upon the terms and conditions hereinafter described.

. . . .

7. [Interstate] will not incur any debt, obligation, or liability without the prior approval of the Department. Department specifically agrees that it will not unreasonably withhold approval of the utilization and payment by [Interstate] of specialized consultants or service providers, such as legal counsel, accountants, actuaries, or other insurance experts.

. . . .

16. This Agreement is to be held confidential under G.S. 58-16.2 and is to be shared only with legal counsel and Department personnel directly involved. [Interstate] reserves whatever rights it may have to seek civil redress for breach of this Agreement.

Paragraphs 3-6 further divested Interstate of any authority to make payments or otherwise transfer assets without the prior approval of the Department of Insurance, the supervising authority.

On 5 February 1990 the Commissioner instituted this delinquency proceeding against Interstate. On 5 March 1990 the trial court entered

an Order of Rehabilitation and appointed the Commissioner as Rehabilitator. On 9 April 1990 the trial court converted the rehabilitation proceeding into a liquidation proceeding and appointed the Commissioner as Liquidator. After the determination of insolvency and Order of Liquidation, the North Carolina Insurance Guaranty Association (Guaranty Association) initiated its obligations under the Insurance Guaranty Association Act, N.C. Gen. Stat. § 58-48-1, *et seq.* (1994).

Attorneys include claimants within the law firms of Poyner & Spruill; Teague & Rotenstreich; Jenkins & Hinton; Arthurs & Foltz; and Henson, Henson, Bayliss & Sue. Attorneys represented insureds of Interstate prior to the delinquency proceeding. Attorneys filed a Petition for Payment of Counsel Fees alleging: (1) they were "retained as counsel by [Interstate] for the purpose of defending its insureds;" and (2) they were entitled to "reasonable counsel fees for legal services and expenses incurred in connection with the defense of [Interstate's] insureds prior to the entry of the Order of Rehabilitation on March 5, 1990." Attorneys next filed a Petition to Determine Priority of Distribution of Counsel Fees contending their fees were costs for the "administration or conservation of assets of [Interstate]" entitled to Class 1 priority. On 8 April 1993 Eastern served its Proof of Claim on the Liquidator.

On 17 February 1994 the Liquidator filed its Domiciliary Liquidator's Report and Recommendations in the trial court. The Liquidator's Report allowed the claims of Attorneys and Eastern. Both claims were categorized as general unsecured creditors, a Class 5 claim. Attorneys objected to this classification on 3 March 1994 and Eastern objected on 12 April 1994. On 5 October 1994 the trial court approved the report.

We review two issues on appeal: (1) whether Attorneys are entitled to Class 1 priority in distribution; and (2) whether Eastern is entitled to Class 1 or, in the alternative, Class 3 priority.

I.

Attorneys contend they are entitled to Class 1 priority because: (1) the Commissioner breached the Agreement by failing to pay for legal services rendered; (2) the "common fund" doctrine entitles Attorneys to Class 1 priority distribution; and (3) the distribution scheme of N.C. Gen. Stat. § 58-30-220 requires that Attorneys' claims be afforded Class 1 status.

Although Attorneys present several compelling public policy arguments, we note at the outset that our final decision is ultimately constrained by prior precedent and the comprehensive statutory framework of Chapter 58 of the North Carolina General Statutes.

### A.

[1] We first turn to Attorneys' allegation the Commissioner breached the Agreement between the Department of Insurance and Interstate.

"To assert a claim for breach of contract, defendant must be either a party to the contract or a third-party beneficiary." *Jefferson-Pilot Life Ins. Co. v. Spencer*, 110 N.C. App. 194, 205, 429 S.E.2d 583, 589, *disc. review allowed and cert. allowed*, 334 N.C. 434, 433 S.E.2d 176 (1993), *rev'd on other grounds*, 336 N.C. 49, 442 S.E.2d 316 (1994). Attorneys are not parties to the Agreement and, therefore, must assert standing as third-party beneficiaries.

It is well-settled a claimant is a third-party beneficiary if he can establish, " '(1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; [and] (3) that the contract was entered into for his direct, and not incidental, benefit.' " *Hoots v. Pryor*, 106 N.C. App. 397, 408, 417 S.E.2d 269, 276 (*quoting Leasing Corp. v. Miller*, 45 N.C. App. 400, 405-406, 263 S.E.2d 313, 317, *disc. review denied*, 300 N.C. 374, 267 S.E.2d 685 (1980)), *disc. review denied*, 332 N.C. 545, 421 S.E.2d 148 (1992). In the present case, the existence of a valid and enforceable contract between the Commissioner and Interstate is undisputed.

A claimant is a direct beneficiary if " 'the contracting parties intended that a third party should receive a benefit which might be enforced in the courts. It is not sufficient that the contract does benefit him if in fact it was not intended for his direct benefit.' " *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 329 N.C. 646, 651, 407 S.E.2d 178, 181 (1991) (*quoting Snyder v. Freeman*, 300 N.C. 204, 220, 266 S.E.2d 593, 603-604 (1980)) (citations omitted). The court, in determining the contracting parties intent, "should consider [the] circumstances surrounding the transaction as well as the actual language of the contract." *Id.* at 652, 407 S.E.2d at 182. Specifically, " '[w]hen a third person seeks enforcement of a contract made between other parties, the contract must be construed strictly against the party seeking enforcement.' " *Chemical Realty Corp. v. Home Fed'l Savings & Loan*, 84 N.C. App. 27, 34, 351 S.E.2d 786, 791 (1987) (*quot-*

*ing Lane v. Surety Co.*, 48 N.C. App. 634, 638, 269 S.E.2d 711, 714 (1980), *disc. review denied*, 302 N.C. 219, 276 S.E.2d 916 (1981)).

In the present case, Attorneys rely on *Trust Co. v. Processing Co.*, 242 N.C. 370, 88 S.E.2d 233 (1955), to support the proposition they are direct and intended beneficiaries of the Agreement. In *Trust Company* Wilson sold one-half of his majority share in Bowling Green Spinning to Catawba Processing. On the same day, the parties entered into two other contracts: (1) Catawba agreed to sell Bowling Green's product at a 5% commission so long as Wilson and Catawba owned the majority of Bowling Green stock; and (2) Catawba agreed to pay Wilson 30% of its 5% commission for the life of the sales agreement. The Supreme Court noted Wilson was specifically included in the other contracts, and the contracts were all part of a common plan. Relying on these facts, the Court found Wilson was a third-party beneficiary of the sales contract. *Trust Co.*, 242 N.C. at 378-379, 88 S.E.2d at 239-240.

We find the present case distinguishable from *Trust Company* because the Agreement does not specifically mention Attorneys. The only reference to retained counsel is found in the generic phraseology of paragraph 7 of the Agreement. Application of the rule in *Chemical Realty* to the language of paragraph 7 indicates, in our view, that Attorneys were not specifically contemplated by Interstate or the Commissioner as beneficiaries of the Agreement. Thus, we believe *Trust Company* does not support the proposition Attorneys are third-party beneficiaries of the Agreement.

Further, after careful review of the present record, we are not persuaded by Attorneys' contention they are intended, direct beneficiaries of the Agreement. Accordingly, we affirm the trial court's dismissal of Attorneys' claim for breach of the Agreement.

B.

[2] We next address the Attorneys' argument the "common fund doctrine" entitles them to Class 1 priority distribution.

The common fund doctrine is an equitable exception to the general rule attorney fees are not awarded without statutory authority. *Raleigh-Durham Airport Authority v. Howard*, 88 N.C. App. 207, 211-212, 363 S.E.2d 184, 186 (1987), *disc. review denied*, 332 N.C. 113, 367 S.E.2d 916 (1988). The common fund doctrine allows " 'a court of equity, or a court in the exercise of equitable jurisdiction, [] in its discretion, and without statutory authorization, [to] order an allowance

for attorney fees to a litigant who at his own expense has maintained a successful suit for the preservation, protection, or increase of a common fund or of common property . . . ." *Id.* (*quoting Horner v. Chamber of Commerce*, 236 N.C. 96, 97-98, 72 S.E.2d 21, 22 (1952)).

The common fund doctrine, as with all equitable doctrines,

> "supplements the law. . . . Its character as the complement merely of legal jurisdiction rests in the fact that it seeks to reach and do complete justice where courts of law, through the inflexibility of their rules and want of power to adapt their judgments to the special circumstances of the case, are incompetent to do. It was never intended that it should, and it will never be permitted to, override or set at naught a positive statutory provision. . . . "

*Jones Cooling & Heating v. Booth*, 99 N.C. App. 757, 759, 394 S.E.2d 292, 294 (1990) (*quoting Zebulon v. Dawson*, 216 N.C. 520, 522, 5 S.E.2d 535, 537 (1939) (plaintiffs could not use an equitable theory to reduce the post-judgment interest rate mandated by statute)), *disc. review denied*, 328 N.C. 732, 404 S.E.2d 869 (1991). In other words, "[e]quity will not lend its aid in any case when the party seeking it has a full and complete remedy at law." *Development Co. v. County of Wilson*, 44 N.C. App. 469, 470, 261 S.E.2d 275, 276, *disc. review denied and appeal dismissed*, 299 N.C. 735, 267 S.E.2d 660 (1980) (plaintiff could not use an injunction to prevent the county's use of eminent domain when plaintiff had a statutory remedy).

N.C. Gen. Stat. § 58-30-220 provides the comprehensive statutory scheme for determination of claim priority in the present context. N.C. Gen. Stat. § 58-30-220 (1994). Thus, under *Development Company*, the equitable common fund doctrine may be used only to secure a right to payment, not alter priority of payment, under Chapter 58 of the North Carolina General Statutes.

Attorneys' right to their fees is not, and never has been, contested. Rather, Attorneys' objection goes to the level of priority their claim was afforded by the Liquidator and the trial court. Thus, under our interpretation of N.C. Gen. Stat. § 58-30-220, Attorneys' contention their claims are entitled to higher priority under the common fund doctrine must fail.

Accordingly, we conclude the comprehensive nature of N.C. Gen. Stat. § 58-30-220 precludes the application of any equitable doctrine— including the common fund doctrine—to alter the Class 5 priority assigned to Attorneys' claims.

C.

[3] Finally, we turn to Attorneys' contention their fees constitute "cost[s] of administration and conservation of assets" entitled to Class 1 priority.

N.C. Gen. Stat. § 58-30-225(b) provides the trial court with broad discretionary powers to approve, disapprove, or modify the Liquidator's report. N.C. Gen. Stat. § 58-30-225(b) (1994). Such broad discretion is clearly consistent with other cases arising under Chapter 58. *See State ex rel. Long v. American Security Life Assurance Co.*, 109 N.C. App. 530, 533, 428 S.E.2d 200, 202 (1993) (the trial court has been granted broad discretion to award the fees and costs incurred in defending against a petition for liquidation); *Ingram, Comr. of Insurance v. Assurance Co.*, 34 N.C. App. 517, 523, 239 S.E.2d 474, 477 (1977) (trial court has broad ministerial and initiative authority in rehabilitation proceedings).

Because of the discretionary nature of N.C. Gen. Stat. § 58-30-225(b), we believe the trial court's decision should not be disturbed absent an abuse of discretion. *See American Security*, 109 N.C. App. at 534, 428 S.E.2d at 202. The trial court abuses its discretion when it makes "a patently arbitrary decision, manifestly unsupported by reason." *Buford v. General Motors Corp.*, 339 N.C. 396, 406, 451 S.E.2d 293, 298 (1994) (*citing State v. Locklear*, 331 N.C. 239, 248-249, 415 S.E.2d 726, 732 (1992)). Absent an abuse of discretion, we are bound by the trial court's findings of fact if they are supported by competent evidence. *Nobles v. First Carolina Communications*, 108 N.C. App. 127, 132, 423 S.E.2d 312, 315 (1992), *disc. review denied*, 333 N.C. 463, 427 S.E.2d 623 (1993).

Attorneys allege the plain language of N.C. Gen. Stat. § 58-30-220(1) does not limit Class 1 priority solely to actions taken to conserve assets after the creation of a Chapter 58 estate. Rather, Attorneys contend, under the plain language of the statute, any action that conserves assets which are ultimately incorporated into the estate also merits Class 1 priority. This allegation must necessarily be resolved by recourse to principles of statutory interpretation.

" 'Statutory interpretation properly begins with an examination of the plain words of the statute.' " *Hyler v. GTE Products Co.*, 333 N.C. 258, 262, 425 S.E.2d 698, 701 (1993) (*quoting Correll v. Division of Social Services*, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992)). If the language of the statute is clear, this Court must implement the statute

according to the plain meaning of its terms, *id.,* " 'unless the context . . . of the statute requires otherwise,' " *In Re Appeal of Medical Center,* 91 N.C. App. 107, 110, 370 S.E.2d 597, 599 (1988) (*quoting State v. Wiggins,* 272 N.C. 147, 153, 158 S.E.2d 37, 42 (1967), *cert. denied,* 340 U.S. 1028, 20 L. Ed. 2d 285 (1968)).

The first sentence of N.C. Gen. Stat. § 58-30-220 plainly states, "The priority of distribution of claims from the insurer's estate shall be in accordance with the order in which each class of claims is set forth in this section." N.C. Gen. Stat. § 58-30-220 (1994) (emphasis added). In our view, "assets," as used in N.C. Gen. Stat. § 58-30-220(1), must refer to items listed by the Liquidator which become part of the "insurer's estate." Class 1 priority, therefore, is awarded only to entities which conserve or administer assets of the insurer <u>after</u> the items have become part of the "insurer's estate."

The trial court here found, and we agree, that Attorneys' claims are not "costs for administration or conservation of assets of the insurer" because no estate existed when Attorneys' claims arose.

Accordingly, we conclude the trial court's interpretation and application of N.C. Gen. Stat. § 58-30-220 was not an abuse of discretion and therefore affirm the trial court's approval of the Liquidator's Report under N.C. Gen. Stat. § 58-30-225(b).

## II.

[4] Eastern alleges its claim for services rendered should be accorded Class 1 priority or, in the alternative, Class 3 priority.

Initially, we note Eastern did not raise its contention concerning Class 3 priority in the trial court. Accordingly, we dismiss Eastern's alternative claim for Class 3 priority. *See* N.C.R. App. P. 10(b)(1).

Eastern next alleges it aided in the "administration" or "conservation" of the "assets of the insurer" because the files it collected for Interstate prior to entry of the Order of Liquidation were made available after entry of the Order of Liquidation.

We believe the files seized from Eastern by the Liquidator and the Guaranty Association relate to the "insurer's estate" in the same way as Attorneys' claims for counsel fees—both sets of claims accrued prior to the delinquency proceeding. Thus, for the reasons we previously stated, Eastern did not directly "conserve" or "administer" the assets of the insurer after establishment of the "insurer's estate."

Accordingly, we find no merit in Eastern's claim of Class 1 priority and affirm the trial court's order.

Affirmed.

Judges LEWIS and WALKER concur.