**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

STATE OF NORTH CAROLINA, on
relation of James E. Long,
Commissioner of Insurance, as
Liquidator of the Northwestern
Security Life Insurance Company,
<u>Plaintiff-Appellant,</u>

v.

No. 97-2108

UNITED STATES OF AMERICA,
<u>Defendant-Appellee.</u>

NATIONAL CONFERENCE OF INSURANCE
GUARANTY FUNDS; NATIONAL
ORGANIZATION OF LIFE AND HEALTH
INSURANCE GUARANTY ASSOCIATIONS,
<u>Amici Curiae.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, District Judge.
(CA-96-921-5-F)

Argued: January 28, 1998

Decided: April 16, 1998

Before LUTTIG and MICHAEL, Circuit Judges, and
GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Goodwin wrote the opinion,
in which Judge Luttig and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** V. Lane Wharton, Jr., BODE, CALL & STROUPE, L.L.P., Raleigh, North Carolina, for Appellant. Robert Martin Rolfe, HUNTON & WILLIAMS, Richmond, Virginia, for Amici Curiae. Paula Keyser Speck, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Anthony D. Taibi, BODE, CALL & STROPE, L.L.P., Raleigh, North Carolina, for Appellant. Thomas W. Jenkins, Rowe W. Snider, Ronald M. Lepinskas, LORD, BISSELL & BROOK, Chicago, Illinois, for Amici Curiae. Loretta C. Agrett, Assistant Attorney General, Janice McKenzie Cole, United States Attorney, David I. Pincus, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

GOODWIN, District Judge:

Northwestern Security Life Insurance Company (Northwestern) was a North Carolina corporation specializing in life, health, and accident insurance. Northwestern failed in the late eighties after being looted by its holding company, resulting in a loss of over $10 million. J.A. at 55. On November 2, 1989, the Wake County Superior Court ordered Northwestern placed in rehabilitation and appointed the appellant, North Carolina Insurance Commissioner James E. Long, receiver of the company. J.A. at 28. Rehabilitation efforts proved unsuccessful, and on May 8, 1990, the Superior Court ordered Northwestern placed in liquidation and instructed Commissioner Long to marshal and liquidate Northwestern's remaining assets. J.A. at 56, 61.

As liquidator, Commissioner Long distributed the remaining assets according to the state priority statute in effect at the time, N.C. GEN.

2

STAT. § 58-30-220, and the federal priority statute, 31 U.S.C. § 3713. The federal priority statute required Commissioner Long to accord first priority to claims of the United States. Therefore, Commissioner Long paid federal income taxes of $159,253,[1] which accrued during liquidation, before paying any other claims. J.A. at 12-15. Commissioner Long also paid real estate taxes, state license taxes and fees, state premium taxes, state franchise taxes, and social security taxes during the liquidation period, presumably as first-priority costs of administration under the state priority statute. J.A. at 31, 40-41. After payment of administrative costs, Northwestern's remaining assets covered only partial payments to third-priority claims of policyholders and guaranty associations.[2] J.A. at 8, 45. No funds remained to pay fourth-priority unearned premium claims and fifth-priority claims of general creditors.

In 1993, the Supreme Court decided United States Department of the Treasury v. Fabe, which held that under the McCarran-Ferguson Act, 15 U.S.C. § 1012, state insurance insolvency statutes are not preempted by the federal priority statute to the extent that the state statutes afford a higher priority to policyholder claims and claims for administrative expenses than to claims of the United States. 508 U.S. 491, 493 (1993). In response to Fabe, the Commissioner filed amended tax returns for 1990 and 1991. He argued that Fabe allowed him to pay first-priority administrative expenses and third-priority policyholder claims before federal claims, and because there would be no assets left after paying these two classes of claims, that he was entitled to a refund of the $159,253 paid in federal income taxes in 1990 and 1991. J.A. at 16-17.

On November 3, 1994, the Internal Revenue Service informed the Commissioner that it would not allow his refund claim on the grounds that the federal income taxes that accrued during liquidation were

_____

[1] Specifically, Commissioner Long paid an alternative minimum tax of $112,377 and an environmental tax of $4343 in 1990, and an alternative minimum tax of $42,165 and an environmental tax of $368 in 1991.
[2] The North Carolina priority statute accorded certain employee wage claims second-priority status, but because no such claims were made during liquidation, the Commissioner proceeded directly to third-priority claims.

3

entitled to first-priority status as administrative expenses under North Carolina General Statute § 58-30-220(1). J.A. at 19-20. On November 6, 1996, the Commissioner filed suit in district court, claiming that he was entitled to the refund. J.A. at 5-11. The court granted summary judgment for the United States, holding that the federal taxes at issue qualified as administrative expenses entitled to first-priority status under the North Carolina statute. J.A. at 90. We review the district court's grant of summary judgment de novo.

When an insurance company enters liquidation, state statutes often create a priority scheme for payment of claims from the company's assets. Until recently, such state statutes were preempted by the federal priority statute, which provides that "[a] claim of the United States Government shall be paid first when a person indebted to the Government is insolvent and . . . an act of bankruptcy is committed." 31 U.S.C. § 3713(a)(1)(A)(iii). However, in 1993, the Supreme Court saved these state priority statutes from federal preemption to the extent that they protect policyholders. Fabe, 508 U.S. at 493. The Court based its decision on the McCarran-Ferguson Act, which exempts from federal preemption state laws enacted "for the purpose of regulating the business of insurance." 15 U.S.C. § 1012(b). The Supreme Court reasoned that the provisions in Ohio's priority statute which protected policyholder interests were enacted "for the purpose of regulating the business of insurance." Fabe, 508 U.S. at 504 (citing 15 U.S.C. § 1012(b)). Although other provisions in Ohio's priority statute were preempted by federal law, the Court concluded that the provisions which protected policyholders were not. Id. at 508-09. Specifically, the Court held that, "Ohio may effectively afford priority, over claims of the United States, to the insurance claims of policyholders and to the costs and expenses of administering the liquidation." Id. at 493.

Thus, after Fabe, the former North Carolina priority statute, § 58-30-220,**3** and the federal priority statute interact as follows: Former
_____

**3** The North Carolina General Assembly repealed and replaced this statute in 1993. However, it still controls the disposition of this case because under North Carolina General Statute § 58-30-105(c), the relative rights of Northwestern's creditors are governed by the law in effect on the date Northwestern was placed in liquidation.

4

North Carolina General Statute § 58-30-220 distributes claims in the following order:

> (1) claims for cost of administration and conservation of assets of the insurer;
>
> (2) compensation actually owing to employees . . .;
>
> (3) claims or portions of claims for benefits under policies . . .;
>
> (4) claims for unearned premiums;
>
> (5) claims of general creditors.

Although the federal priority statute accords first-priority status to federal claims, it only preempts subsections (2), (4), and (5) above. This is because Fabe saves from preemption claims for administrative expenses and policyholder claims. Thus, under Fabe, the Commissioner was obligated to pay costs of administration and conservation of assets first, policyholder claims second, and federal claims third. Northwestern's available assets, however, were sufficient only to cover administrative expenses and a portion of the policyholder claims. After paying these claims, the Commissioner would not have had any assets left to pay federal claims. Under this view, the Commissioner contends that he is entitled to a refund of federal income taxes paid in 1990 and 1991.

The United States argues, however, that the federal taxes are themselves costs of administration, qualifying for first-priority status under subsection (1) of § 58-30-220. As noted above, subsection (1) of § 58-30-220 withstands federal preemption. Thus, the question of whether federal taxes are costs of administration under§ 58-30-220(1) must be resolved under North Carolina state law.

The Commissioner relies heavily on National Surety Corp. v. Sharpe, 72 S.E.2d 109 (N.C. 1952), to show that federal taxes do not qualify as administrative expenses under North Carolina law. In that case, the North Carolina Supreme Court addressed the relative rights

5

of claimants against an insolvent manufacturing company in receivership proceedings. After creating a complicated priority scheme for payment of various purchase money chattel mortgages and judgment creditor liens, the National Surety Corp. court distributed the remaining assets according to a priority scheme that placed administrative expenses and federal taxes in separate categories. Id. at 126. However, any support that National Surety Corp. lends to the Commissioner's argument vanishes after referring to the later decided case of King v. Premo & King, Inc., in which the North Carolina Supreme Court explicitly held that federal taxes which accrue postreceivership are costs of administration. 129 S.E.2d 493, 500 (N.C. 1963).

North Carolina statutory law also supports the conclusion that costs of administration include postliquidation federal taxes. For example, North Carolina General Statute § 58-30-120(4) authorizes the Commissioner "to defray from the funds or assets of the insurer all expenses of taking possession of, conserving, conducting, liquidating, disposing of, or otherwise dealing with the business and property of the insurer." The last clause, in particular, sweeps various expenses into the realm of administrative costs. In "dealing with the business and property" of Northwestern, the Commissioner was legally obligated to pay taxes as they accrued. Under the North Carolina statute, these payments could properly be characterized as administrative costs.

North Carolina is hardly alone in reaching this determination. It is a generally accepted proposition that taxes which accrue postreceivership or postliquidation are administrative costs. For example, the Bankruptcy Code includes taxes in its itemization of allowed administrative expenses. 11 U.S.C. § 503(b)(1)(B). In addition, this Court has previously held that postpetition taxes incurred by a bankrupt debtor's estate constitute a cost of administration. United States v. Friendship College, Inc., 737 F.2d 430, 431-32 (4th Cir. 1984). And the Third Circuit has noted, "[p]ost-bankruptcy taxation . . . has long been viewed by the courts as part of classic administration expenses." In re Connecticut Motor Lines, Inc., 336 F.2d 96, 99 (3d Cir. 1964).

The Commissioner attempts to distinguish the taxes in this case from other taxes paid as administrative expenses by claiming that the alternative minimum tax and the environmental tax were neither nec-

6

essary nor beneficial to the estate. The Commissioner urges too narrow a view. As the Supreme Court ruled in <u>Reading Co. v. Brown</u>, damages arising from postreceivership negligence constitute administrative expenses because they are "costs ordinarily incident to operation of a business." 391 U.S. 471, 483 (1968). Certainly, paying tort damages did not benefit the estate in <u>Reading Co.</u> in an obvious sense. Similarly, in this case, paying federal taxes does not benefit the estate in an obvious sense, because it results in fewer assets for distribution. But paying legal obligations is necessary and beneficial in the sense that it allows the receiver or the liquidator to conduct the ongoing business of selling assets and distributing claims in an orderly manner. The legal obligations that arise as a result of this ongoing business are properly considered administrative expenses.

In the end, it comes down to a question of timing, that is, when the taxes accrued. Taxes that accrued before Northwestern was placed in liquidation cannot be considered administrative expenses because those taxes accrued before there was an estate to administer. <u>See State ex rel. Long v. Interstate Cas. Ins. Co</u>., 464 S.E.2d 73, 78 (N.C. Ct. App. 1995). Taxes that accrued after liquidation are administrative expenses.

The Commissioner concedes that these taxes accrued in 1990 and 1991 (postliquidation), but nonetheless argues that they should not be classified as administrative expenses because they were based on "phantom income." (Appellants' Br. at 15-16). According to the Commissioner, this phantom income was generated by premium payments received by Northwestern before liquidation and subsequently stolen. Because the taxes were based on money Northwestern had, and lost, before liquidation, the Commissioner argues that the taxes should not be considered administrative expenses incident to the liquidation.

We find this argument unpersuasive. Insurance companies like Northwestern are taxed under the Internal Revenue Code, 26 U.S.C. § 832(b)(4). Under this provision, insurers benefit from a tax scheme that defers recognition of income. That is, premiums may be paid upfront, but for tax purposes, the earned income from the premium is spread over the life of the policy. It is immaterial whether an insurer actually has the premium income on hand when the IRS attributes that income to the insurer. Income taxed in years subsequent to the year

when the premium is actually paid is not "phantom income." It is real income. Because the federal income taxes at issue accrued in 1990 and 1991, after the Superior Court entered the liquidation order, those taxes should be considered administrative expenses entitled to first-priority status under former North Carolina General Statute § 58-30-220. For these reasons, the Court affirms the district court's grant of summary judgment for the United States.

<u>AFFIRMED</u>