FREDERICKA HOLSHOUSER, PLAINTIFF v. SHANER HOTEL GROUP PROPERTIES ONE LIMITED PARTNERSHIP, SHANER OPERATING CORPORATION, BEN ROBINSON, AND LOSS PREVENTION SERVICES, INC., DEFENDANTS

No. COA98-814

(Filed 3 August 1999)

## 1. Negligence— summary judgment inappropriate—ambiguity—contract—extrinsic evidence

The trial court erred as a matter of law in granting summary judgment in favor of defendant-security guard and defendant-security company on plaintiff-employee's claim of negligence for failure to protect her, as a hotel employee, from criminal attacks. Since defendant-employer's contract for guard service was ambiguous with respect to the nature of the security company's duties under the contract, the ambiguity permits resort to extrinsic evidence creating an issue of fact for the jury.

## 2. Contracts— no breach—not a third-party beneficiary— plain language of contract

The trial court did not err in dismissing plaintiff-employee's claim against defendant-security guard and defendant-security company for breach of contract because plaintiff was not a third-party beneficiary of the contract for guard service between defendant-employer and defendant-security company. The plain language of the agreement shows defendant-security company and defendant-employer did not intend plaintiff to receive a legally enforceable right under the contract in the absence of negligent performance of the services.

**3. Workers' Compensation— summary judgment inappropriate—assault—unknown assailant—not arising out of and in the course of employment**

The trial court erred in granting summary judgment to defendant-employer because the attack on plaintiff-employee in the employee parking lot by an unknown assailant while the employee was coming to work was not an injury arising out of and in the course of her employment with the hotel so as to limit her remedy to the Workers' Compensation Act because the high criminal activity on the hotel premises and the surrounding neighborhood made it a hazard to which hotel employees would have been equally exposed apart from the employment.

Judge HUNTER concurring in part and dissenting in part.

Appeal by plaintiff from judgments entered 31 March 1998 and 14 April 1998 by Judge Julius A. Rousseau, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 24 February 1999.

*McCall Doughton & Blancato, PLLC, by Thomas J. Doughton, for plaintiff-appellant.*

*Young Moore and Anderson, P.A., by John A. Michaels and Reed N. Fountain, for defendant-appellee Shaner Operating Corporation.*

*Davis & Hamrick, L.L.P., by Kent L. Hamrick, for defendants-appellees Loss Prevention Services, Inc., and Ben Robinson.*

TIMMONS-GOODSON, Judge.

Fredericka Holshouser ("plaintiff") appeals from orders granting summary judgment to Shaner Operating Corporation ("Shaner Operating"), Ben Robinson ("Robinson"), and Loss Prevention Services, Inc. ("LPS") on plaintiff's claims for negligence and breach of contract. Having carefully examined plaintiff's arguments, we reverse in part, affirm in part, and remand this case for further appropriate proceedings.

The relevant factual and procedural background is as follows: On 23 October 1996, plaintiff was employed as a waitress at the Holiday Inn Select Hotel ("the hotel") in Winston-Salem, North Carolina. The hotel was owned by Shaner Hotel Group Properties One Limited Partnership ("Shaner Hotel Group") and was operated by Shaner Operating. Robinson was working as a security guard for the hotel

pursuant to a contract between Shaner Hotel Group and Robinson's employer, LPS.

At 4:40 a.m. on 23 October 1996, plaintiff arrived at the hotel for her work shift and parked in the rear parking lot, as required by her employer, Shaner Operating. The purpose of this requirement was to make front parking spaces available for hotel guests. As plaintiff approached the back door of the hotel, an unknown assailant grabbed her from behind, pulled her into an adjacent area overgrown with trees and shrubbery, and raped her.

Plaintiff filed a complaint on 23 June 1997 against Shaner Hotel Group alleging that it was negligent in failing to provide adequate security and proper lighting and in failing to cut back the shrubbery and trees. Thereafter, plaintiff filed an Amended and Second Amended Complaint adding Robinson, LPS, and Shaner Operating as defendants. Plaintiff alleged two theories of recovery against Robinson and LPS: (1) that they were negligent in failing to provide proper security and protection to plaintiff; and (2) that plaintiff was a direct beneficiary of the contract between the hotel and LPS.

After the parties had conducted extensive discovery, Robinson, LPS, Shaner Hotel Group, and Shaner Operating filed motions for summary judgment. On 30 March 1998, before the discovery period had expired, the trial court held a hearing on the motions. The court entered summary judgment for Robinson and LPS on 31 March 1998 and for Shaner Operating on 14 April 1998. Plaintiff's claim against Shaner Hotel Group, however, is still pending. Plaintiff filed timely notice of appeal.

---

Plaintiff raises several issues on appeal: (1) whether Robinson and LPS owed any duty to plaintiff to protect her from the criminal attack committed against her by an unknown assailant; (2) whether plaintiff was a third-party beneficiary of the contract for security services between LPS and Shaner Hotel Group; (3) whether the injuries sustained by plaintiff during the attack were compensable under the Workers' Compensation Act; and (4) whether the trial court erred in granting summary judgment to Robinson, LPS, and Shaner Operating while discovery was still pending. We will examine each of these issues in turn.

Plaintiff argues first that the trial court improvidently granted summary judgment for Robinson and LPS on plaintiff's claim that

they were negligent in failing to properly secure and protect her against criminal assaults. We agree.

On appeal from an order granting summary judgment, this Court's review is confined to two questions: "(1) whether there is a genuine issue of material fact, and (2) whether the moving party is entitled to judgment as a matter of law." *Robinson, Bradshaw & Hinson v. Smith*, 129 N.C. App. 305, 314, 498 S.E.2d 841, 848, *disc. review denied*, 348 N.C. 695, 511 S.E.2d 649, *and disc. review dismissed*, 348 N.C. 695, 511 S.E.2d 650 (1998). The party moving for summary judgment bears the burden of proving that the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, establish the absence of any triable issue of fact. *Lamm v. Bissette Realty*, 94 N.C. App. 145, 379 S.E.2d 719 (1989). In ruling on a motion for summary judgment, the trial court must examine the evidence in the light most favorable to the non-moving party, and the non-moving party is entitled to have all factual inferences drawn in her favor. *Davis v. Town of Southern Pines*, 116 N.C. App. 663, 666, 449 S.E.2d 240, 242 (1994).

"Negligence is the failure to exercise proper care in the performance of a legal duty owed by a defendant to a plaintiff under the circumstances." *Cassell v. Collins*, 344 N.C. 160, 163, 472 S.E.2d 770, 772 (1996). To establish a prima facie case of negligence liability, the plaintiff must show: (1) that the defendant owed her a duty of care; (2) that the conduct of the defendant breached that duty; (3) that the breach actually and proximately caused the plaintiff's injury; and (4) that the plaintiff sustained damages as a result of the injury. *Lamm*, 94 N.C. App. at 146, 379 S.E.2d at 721. "When there are factual issues to be determined that relate to the defendant's duty, or when there are issues relating to whether a party exercised reasonable care, summary judgment is inappropriate." *Ingle v. Allen*, 71 N.C. App. 20, 26, 321 S.E.2d 588, 594 (1984).

Plaintiff contends that under the terms of the Contract For Guard Service executed by the President of LPS and the Vice President of Operations for Shaner Hotel Group, LPS and Robinson owed plaintiff a duty to protect her from criminal affronts. LPS and Robinson argue, however, that an obligation to protect hotel employees from harm did not originate from any of the promises contained in the agreement; therefore, the court was correct in entering summary judgment in favor of the security company and its employee. For the following reasons, we hold that the contract was ambiguous with respect to the nature of LPS' duties under the contract, that this ambiguity

raised an issue of material fact to be resolved by the jury with the help of extrinsic evidence, and that summary judgment was, therefore, inappropriate.

In North Carolina, it is well settled that an injured third party need not be in privity of contract to recover against a contracting party for negligently performing services for another. *Id.* at 26, 321 S.E.2d at 594. To that end, our courts have adopted the following principle of tort law, as set forth in *Condominium Assoc. v. Scholtz Co.*, 47 N.C. App. 518, 268 S.E.2d 12 (1980):

> [U]nder certain circumstances, one who undertakes to render services to another which he should recognize as necessary for the protection of a third person, or his property, is subject to liability to the third person, for injuries resulting from his failure to exercise reasonable care in such undertaking.

*Id.* at 522, 268 S.E.2d at 15. Determining whether a party who has contracted to provide services for another has assumed a duty to protect third parties from harm requires balancing the following factors:

> "(1) the extent to which the transaction was intended to affect the other person; (2) the foreseeability of harm to him; (3) the degree of certainty that he suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury; (5) the moral blame attached to such conduct; and (6) the policy of preventing future harm."

*Ingle*, 71 N.C. App. at 27, 321 S.E.2d at 594 (quoting *Leasing Corp. v. Miller*, 45 N.C. App. 400, 406-07, 263 S.E.2d 313, 318 (1980)). "If the evidence, direct or circumstantial, is sufficient as to any of these factors, it will create a jury question as to whether such a duty exists and whether it was breached by the defendant." *Id.*

In *Cassell*, our Supreme Court held that the extent of the duty, if any, owed by a security company to a guest who was stabbed at an apartment complex the company was hired to patrol, is governed by the contract between the security company and the property owner. *Cassell*, 344 N.C. at 163-64, 472 S.E.2d at 772. The contract in question provided that the company's security guard was responsible for "closing and securing the complex pool, tagging cars that were parked improperly, making rounds on the property, and preventing tenants from 'hanging out' in common areas." *Id.* at 164, 472 S.E.2d at 772-73. The memorandum from the complex management to the security company further provided that the security guard "was 'to be visible

both as a deterrent to potential vandals as well as a sense of security for residents.' " *Id.* at 164, 472 S.E.2d at 773. Because neither the contract nor the memorandum imposed a duty on the security company to protect tenants or their guests, the Court concluded that the security company could not be held liable to the plaintiff for negligence in failing to protect him.

Recently, this Court, in *Hoisington v. ZT-Winston-Salem Assoc.*, 133 N.C. App. 485, 516 S.E.2d 176 (1999), considered the issue of liability for negligently performing security services. That case involved a brutal assault against an employee of Silas Creek Shopping Center. While working in one of the stores on the night of 9 December 1995, the plaintiff's ward, Jill Marker, was severely beaten, resulting in serious and permanent injuries. The owner of Silas Creek had contracted with Wackenhut Corporation to provide security guard services for the shopping center. Under the contract, the "Scope of Work" was as follows:

> Vehicular and foot patrol of property maintaining high visibility. (Vehicle shall display Wackenhut Security Corporation sign.) Performing watchclock rounds after midnight to end of shift. Completion of daily reports with copy to client. Act as a deterrent against theft, vandalism and criminal activities. Hours of security coverage shall be from 8:00 p.m. to 4:00 a.m.

*Hoisington*, 133 N.C. App. at 487, 516 S.E.2d at 178. On appeal from an order granting summary judgment to Wackenhut on the plaintiff's negligence claim, the plaintiff argued that "defendant Wackenhut owed a duty of reasonable care to persons such as Jill Marker to take reasonable steps to protect them from the reasonably foreseeable tortious acts of third persons." *Hoisington*, 133 N.C. App. at 489, 516 S.E.2d at 180. This Court found, however, that the contract language was similar to that in *Cassell* and, thus, created no duty to "protect" employees of the shopping center from criminal assaults. *Id.*

[1] Therefore, the issue presently before us is whether the trial court erred in determining that as a matter of law, the Contract for Guard Service imposed no duty upon LPS and Robinson to protect hotel employees from criminal assaults. Our examination of the contract reveals ambiguities regarding the responsibilities assumed by LPS and its security officers. Such ambiguities permit resort to extrinsic evidence and create an issue of fact for the jury as to the extent of Robinson and LPS's duties under the agreement.

In interpreting a contract, the court's principle objective is to determine the intent of the parties to the agreement. *Glover v. First Union National Bank*, 109 N.C. App. 451, 428 S.E.2d 206 (1993). Generally, "[w]hen the language of a contract is plain and unambiguous then construction of the agreement is a matter of law for the court." *Whirlpool Corp. v. Dailey Construction, Inc.*, 110 N.C. App. 468, 471, 429 S.E.2d 748, 751 (1993). "However if the terms of the contract are ambiguous then resort to extrinsic evidence is necessary and the question is one for the jury." *Id.* Appellate review of a trial court's determination of whether a contract is ambiguous is *de novo*. *Barrett Kays & Assoc. v. Colonial Building Co., Inc. of Raleigh*, 129 N.C. App. 525, 528, 500 S.E.2d 108, 111 (1998).

An ambiguity exists where the " 'language of a contract is fairly and reasonably susceptible to either of the constructions asserted by the parties.' " *Id.* (quoting *Bicket v. McLean Securities, Inc.*, 124 N.C. App. 548, 553, 478 S.E.2d 518, 521 (1996)); *see also Drye v. Nationwide Mut. Ins. Co.*, 126 N.C. App. 811, 813-14, 487 S.E.2d 148, 150, *disc. review denied*, 347 N.C. 265, 493 S.E.2d 45 (1997). Stated another way, an agreement is ambiguous if the " 'writing leaves it uncertain as to what the agreement was[.]' " *Id.* (quoting *International Paper Co. v. Corporex Constructors, Inc.*, 96 N.C. App. 312, 317, 385 S.E.2d 553, 556 (1989)). " 'The fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous.' " *Glover*, 109 N.C. App. at 456, 428 S.E.2d at 209 (quoting *St. Paul Fire & Marine Ins. v. Freeman-White Assoc.*, 322 N.C. 77, 366 S.E.2d 480 (1988)).

Here, we find ambiguities with respect to the nature of services to be rendered by LPS under the Contract for Guard Service. Regarding the services to be provided by LPS for Shaner Hotel Group, the Contract For Guard Service pertinently states the following:

1. During the term of this contract Client desires LPS to provide uniformed unarmed guards during the hours designated at Client's property[.]

. . .

6. The services to be rendered under this contract by LPS shall be in conformity with operating policies and procedures mutually agreed upon by Client and LPS. However, if at the

request of Client, a guard is assigned duties outside the scope of normal guard duties, Client shall assume complete responsibility for any and all liability arising therefrom.

The contract manifests the parties' intent that the services should be performed according to certain standards of conduct; however, the contract is ambiguous as to those standards, stating only that "services . . . shall be in conformity with the operating policies and procedures mutually agreed upon by Client and LPS." The general reference to "operating policies" and "procedures mutually agreed upon" reveals the parties' intent that the contract be performed according to certain guidelines, but the language of the contract left the exact nature of those guidelines unclear. Furthermore, the reference in Paragraph 6 to "normal guard duties" indicates that LPS's guards are, by virtue of their employment, charged with certain responsibilities. However, nowhere within the four corners of the agreement are these responsibilities listed or explained, other than by general reference to "operating policies." These ambiguities in the language of the contract create an issue of material fact for the jury and allow consideration of extrinsic evidence. *See Barrett*, 129 N.C. App. 525, 500 S.E.2d 108; *Drye*, 126 N.C. App. 811, 487 S.E.2d 148.

Plaintiff presented a sufficient forecast of the evidence to raise issues of material fact on the questions of whether there exists a duty to protect plaintiff under the contract and whether this duty was performed in a negligent manner. Plaintiff offered LPS's Security Procedures Manual ("the manual") as a statement of the operating policies and procedures mutually agreed upon by the parties. Plaintiff also points to the deposition testimony of LPS President Larry W. McClellan, whose signature appears on the Contract For Guard Service, wherein he concedes that all LPS security officers working at the hotel were required, at a minimum, to follow those procedures set forth in the manual.

Section I of the manual, entitled "Rules and Regulations Governing Loss Prevention Services Security Officers," sets out a list of performance requirements. Paragraph 1 provides that "Security Officers shall at all times preserve the peace, *protect life and property, prevent crime, apprehend violators,* and enforce all Loss Prevention Services rules and regulations." (Emphasis added). Paragraph 1 of the subsection entitled "Uniforms and Appearance" further states that "[the officer's] uniform identifies [him] as the individual who is *specifically charged with protecting life and property* at [his] place of duty." (Emphasis added). Moreover, when asked if

one of the services expected of a security guard was to preserve the peace, protect life and property, and prevent crime, McClellan stated "Yes. That is the intent, uh-huh." This evidence, taken in the light most favorable to plaintiff, was sufficient to raise a question of fact as to whether defendant had a contractual duty to protect plaintiff from harm.

In addition, should the jury find such a duty to exist, plaintiff also presented evidence tending to establish the negligent performance of that duty. Plaintiff's evidence showed that Robinson knew that plaintiff arrived at work at approximately 4:00 a.m. and that she was required to park in the rear parking lot. Robinson also knew that the parking lot was poorly lit and that there had been a substantial amount of criminal activity on the premises and in the surrounding neighborhood. Plaintiff also presented evidence tending to show that it was standard practice for the security guard on duty between 4:00 and 5:00 a.m. to stand guard at the rear entrance to the hotel to observe employees coming into work from the rear parking lot. Plaintiff's evidence further tended to show that if Robinson had been patrolling at or near the back door on the morning of 23 October 1996, it is unlikely that the assault against plaintiff would have occurred. In addition, on the morning of the attack on plaintiff, an employee of the hotel advised Robinson that plaintiff had not yet reported for work. Although he knew that plaintiff's vehicle was in the rear parking lot and that there had been various criminal incidents on the premises, Robinson did nothing to ascertain plaintiff's whereabouts. Therefore, we hold that plaintiff presented a sufficient forecast of evidence to withstand a motion for summary judgment on the issue of whether Robinson and LPS acted negligently in failing to protect plaintiff. The trial court erred in entering summary judgment for Robinson and LPS, and we reverse the order accordingly.

[2] Next, plaintiff argues that the trial court erred in dismissing her claim against Robinson and LPS for breach of contract, as she was a third-party beneficiary of the Contract For Guard Service between Shaner Hotel Group and LPS. We must disagree.

To assert a claim for breach of contract, the plaintiff must show that she is either a party to the contract or a third-party beneficiary of the contract. *State ex. rel Long v. Interstate Casualty Ins. Co.*, 120 N.C. App. 743, 747, 464 S.E.2d 73, 75 (1995). A plaintiff is a third-party beneficiary if she can show (1) that a contract exists between two persons or entities; (2) that the contract is valid and enforceable; and

(3) that the contract was executed for the direct, and not incidental, benefit of the plaintiff. *Id.* at 747, 464 S.E.2d at 75-76. A person is a direct beneficiary of the contract if the contracting parties intended to confer a legally enforceable benefit on that person. *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 329 N.C. 646, 651, 407 S.E.2d 178, 181 (1991). It is not enough that the contract, in fact, benefits the plaintiff, if, when the contract was made, the contracting parties did not intend it to benefit the plaintiff directly. *Id.* In determining the intent of the contracting parties, the court "should consider [the] circumstances surrounding the transaction as well as the actual language of the contract." *Id.* at 652, 407 S.E.2d at 182. " 'When a third person seeks enforcement of a contract made between other parties, the contract must be construed strictly against the party seeking enforcement.' " *Chemical Realty Corp. v. Home Fed'l Savings & Loan*, 84 N.C. App. 27, 34, 351 S.E.2d 786, 791 (1987) (quoting *Lane v. Surety Co.*, 48 N.C. App. 634, 638, 269 S.E.2d 711, 714 (1980)).

The contract at issue specifically provides as follows:

The services provided by this contract are solely for the benefit of the Client and neither this contract nor any services rendered hereunder shall give rise to, or shall be deemed to or construed so as to confer any rights on any other party as a third party beneficiary or otherwise and Client agrees to indemnify LPS against any claims by such third parties. LPS shall be liable only for bodily injury, personal injury or property damage resulting directly from the negligent performance of the services rendered under this contract.

From the plain language of the agreement, it is clear that LPS and Shaner Hotel Group did not intend that plaintiff receive a legally enforceable right under the contract, in the absence of the negligent performance of the services. Therefore, the trial court was correct in granting summary judgment to LPS and Robinson on plaintiff's claim for breach of contract under the theory that she is a third-party beneficiary. Plaintiff's argument, then, fails.

**[3]** Plaintiff further argues that the trial court erred in granting summary judgment to Shaner Operating. Plaintiff contends that the assault perpetrated against her was not an injury arising out of and in the course of her employment with the hotel, so as to limit her remedy to that available under the Workers' Compensation Act. Plaintiff's contention has merit.

## HOLSHOUSER v. SHANER HOTEL GRP. PROPS. ONE

[134 N.C. App. 391 (1999)]

Where an injury is compensable under the Workers' Compensation Act, the employee's remedies against the employer are exclusive and, thus, preclude a claim for ordinary negligence. *Wake County Hosp. Sys. v. Safety Nat. Casualty Corp.*, 127 N.C. App. 33, 487 S.E.2d 789, *disc. review denied*, 347 N.C. 410, 494 S.E.2d 600 (1997); N.C. Gen. Stat. § 97-10.0 (1991). To be compensable under the Workers' Compensation Act, the employee's injury must be "(1) by accident, (2) arising out of [her] employment with the defendant, and (3) within the course of [her] employment with the defendant." *Shaw v. Smith & Jennings, Inc.*, 130 N.C. App. 442, 445, 503 S.E.2d 113, 116, *disc. review denied*, 349 N.C. 363, —— S.E.2d —— (1998). An "accident" is an unanticipated and unpleasant event " 'which is not expected or designed by the person who suffers the injury.' " *Id.* (quoting *Adams v. Burlington Industries*, 61 N.C. App. 258, 260, 300 S.E.2d 455, 456 (1983) (citations omitted)). "The term 'arising out of' refers to the origin or causal connection of the accidental injury . . . to the employment," *Ross v. Mark's Inc.*, 120 N.C. App. 607, 610, 463 S.E.2d 302, 304 (1995), and "the term 'in the course of' refers to the time, place and circumstances under which the injury occurred," *Schmoyer v. Church of Jesus Christ of Latter Day Saints*, 81 N.C. App. 140, 142, 343 S.E.2d 551, 552 (1986).

The question presented by this appeal is whether the assault on plaintiff "arose out of" her employment with the hotel. An injury resulting from an assault on an employee is not compensable if the " 'circumstances surrounding the assault furnish no basis for a reasonable inference that the nature of the employment created the risk of such an attack[.]' " *Ross*, 120 N.C. App. at 611, 463 S.E.2d at 305 (quoting *Robbins v. Nicholson*, 281 N.C. 234, 240, 188 S.E.2d 350, 354 (1972)).

> [T]he controlling test of whether an injury "arises out of" the employment is whether the injury is a natural and probable consequence of the nature of the employment. A contributing proximate cause of the injury must be a risk to which the employee is exposed because of the nature of the employment. This risk must be such that it "might have been contemplated by a reasonable person familiar with the whole situation as incidental to the service when he entered the employment. The test 'excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the [employees] would have been equally exposed apart from the employment.' "

*Gallimore v. Marilyn's Shoes,* 292 N.C. 399, 404, 233 S.E.2d 529, 532-33 (1977) (quoting *Bartlett v. Duke University,* 284 N.C. 230, 233, 200 S.E.2d 193, 195 (1973)).

In *Wake County,* this Court concluded that the death of a hospital employee was compensable under the workers' compensation laws because the facts were sufficient to show a causal connection between the employee's death and her employment. The evidence tended to show that "[the employee] was abducted from the employee parking lot, she was assaulted and killed on an adjacent street, she was carrying work materials, and the assailant was a co-employee." 127 N.C. App. at 39, 487 S.E.2d at 792. In the present case, however, the evidence tended to show that although plaintiff was in the employee parking lot walking toward the rear entrance to the hotel, she was abducted and raped by an unknown assailant in an adjacent area overgrown with trees and shrubbery. She had not reported to work, and she was not carrying any money or documents for the hotel. The evidence also tended to show that there had been numerous reported incidents of criminal activity on the hotel premises and in the surrounding neighborhood. In view of these facts, we are of the opinion that the assault on plaintiff was not a "natural and probable consequence of the nature of [plaintiff's] employment," but a " 'hazard to which [hotel employees] would have been equally exposed apart from the employment.' " *Gallimore,* 292 N.C. at 404, 233 S.E.2d at 533 (quoting *Bartlett,* 284 N.C. at 233, 200 S.E.2d at 195). Therefore, the trial court erred in granting summary judgment to Shaner Operating. In light of our holding in this regard, we need not address plaintiff's argument that there was a question of fact as to whether Shaner Operating was her employer.

Plaintiff's final argument is that the trial court erred in allowing defendants' motions for summary judgment while discovery was still pending. Because plaintiff failed to assign error to this matter in the record on appeal, the issue is not properly presented for our review. N.C.R. App. P. 10(a),(c).

In sum, we reverse the entry of summary judgment on plaintiff's negligence claim against Robinson and LPS, we affirm summary judgment on plaintiff's third-party beneficiary breach of contract claim, and we reverse summary judgment on plaintiff's claim against Shaner Operating. This case is remanded to the Superior Court for further proceedings consistent with this opinion.

Reversed in part, affirmed in part, and remanded.

Judge MARTIN concurs.

Judge HUNTER concurs in part and dissents in part.

Judge HUNTER concurring in part and dissenting in part.

I respectfully dissent from the majority opinion in its reversal of summary judgment in favor of Shaner Operating on the issue of whether plaintiff's remedy is limited to those available under the North Carolina Workers' Compensation Act ("Act").

The general rule which applies to this case is when an employee is injured while going to or from his place of work, upon premises owned or controlled by his employer, and his act involves no unreasonable delay, then the injury is generally deemed to have arisen out of and in the course of the employment. *Bass v. Mecklenburg County*, 258 N.C. 226, 128 S.E.2d 570 (1962). However, the employment must be traceable as a contributing proximate cause of the injury in order for it to have "arisen out of" the employment. *Id.* The court is justified in upholding the award as "arising out of employment" "[w]here any *reasonable relationship* to the employment exists, or employment is a contributory cause[.]" *Harless v. Flynn*, 1 N.C. App. 448, 455, 162 S.E.2d 47, 52 (1968) (*quoting Allred v. Allred-Gardner, Inc.*, 253 N.C. 554, 557, 117 S.E.2d 476, 479 (1960)).

In *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 233 S.E.2d 529 (1977), cited in the majority opinion, the North Carolina Supreme Court held that the injury did not arise out of employment where an employee was abducted in the shopping mall parking lot as she left work because the risk of being robbed or abducted was one common to the neighborhood. The employee in *Gallimore* was not carrying anything which indicated she was transporting money or bank deposits for her employer. In that case, the Court noted that a parking lot at the mall in question was well-lighted and concluded that the assault on the employee was not peculiar to the employment as it could happen to anyone who patronized the shopping mall, as employees did not park in a separate area. The Court noted that "[t]he tragic and untimely death of Miss Gallimore was caused by the vicious and unreasoned criminal act of Darrell Lee Young, not by an accident arising out of her employment." *Id.* at 405, 233 S.E.2d at 533.

In another case involving an assault in a parking lot, this Court concluded that a causal connection did exist between the employee's death and her employment when she was abducted from the employee parking lot as she was leaving work carrying work materials, she was assaulted and killed on an adjacent street, and the assailant was a co-employee. *Wake County Hosp. Sys. v. Safety Nat. Casualty Corp.*, 127 N.C. App. 33, 487 S.E.2d 789, *disc. review denied*, 347 N.C. 410, 494 S.E.2d 600 (1997).

Reviewing these cases together, I am of the opinion that they indicate if specific circumstances of work put the employee in a position making it more likely for them to be attacked rather than someone common to the neighborhood, then the resulting injury arises out of and in the course of employment. The evidence in the case *sub judice* indicates that patrons did not park identically to employees as those in *Gallimore*. In fact, plaintiff and other employees were required by their employer to park at the rear of the hotel in order for patrons to obtain the better parking spaces in front. Additionally, plaintiff was required to park in this dimly lit parking lot while reporting to work in the dark, early morning hours, and enter the rear of the building at the point where it had adjacent overgrown shrubs. These factors placed plaintiff in the proximity of her assailant, just as the factors enunciated from *Wake* put that employee in proximity of her co-employee assailant. Therefore, they contributed proximately to her subsequent attack. As recently stated by this Court, "[s]o long as ordered to perform by a superior, acts beneficial to the employer which result in injury to performing employees are within the ambit of the [Workers' Compensation Act]." *Hauser v. Advanced Plastiform, Inc.*, 133 N.C. App. 378, 384, 514 S.E.2d 545, 550 (1999). Plaintiff's parking instructions by her superior were contributing proximate causes of her being assaulted and raped, both of which also occurred on her employer's premises.

In view of the foregoing facts and liberally construing the Act in favor of coverage, *see Parsons v. Pantry, Inc.*, 126 N.C. App. 540, 485 S.E.2d 867 (1997), I am of the opinion that the assault on plaintiff was a natural and probable consequence of plaintiff's employment instead of a risk common to the neighborhood. Accordingly, plaintiff's injuries on her employer's premises while going to work are covered by the Act, *see Bass*, 258 N.C. 226, 128 S.E.2d 570, and therefore, her remedy is limited by it.

Plaintiff contends that the issue of her employer's identity is a question of fact which was not determined by the trial court.

Therefore, I would remand this issue for the trial court to make appropriate findings of fact and conclusions of law determining whether Shaner Operating is plaintiff's actual employer, and thereupon enter an order in accordance with this opinion.