G.E.B., INCORPORATED; and
Geoffrey E. Bodine,
Plaintiffs,

v.

QVC, INC., Defendant.

No. Civ. 1:99CV00939.

United States District Court,
M.D. North Carolina.

Dec. 5, 2000.

Ben H. Sirmons, Jr., Frazier & Frazier, L.L.P., Greensboro, NC, Robert Moraff, Ambrosio Kyreakakis Dilorenzo, Moraff & McKenna, Bloomfield, NJ, for G.E.B., Incorporated, Geoffrey E. Bodine.

Randall R. Adams, Timothy W. Wilson, Poyner & Spruill, L.L.P., Rocky Mount, NC, for QVC, Inc.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Plaintiffs G.E.B., Incorporated ("GEB") and Geoffrey E. Bodine have filed claims against QVC, Inc. ("QVC") alleging that they have been damaged by QVC's breach of contract and unfair and deceptive trade practices. Plaintiffs originally filed their claims on August 16, 1999, in the General Court of Justice, Superior Court Division for Guilford County, North Carolina. Defendant filed notice of removal of the action on October 21, 1999. Defendant has moved for summary judgment on all claims. For the following reasons, the court will grant Defendant's motion for summary judgment in part and deny it in part.

## FACTS

The following facts are established in the pleadings, deposition testimony, and exhibits offered by the parties. Where there are disputes, each party's position is given.

Plaintiff Bodine is a NASCAR Winston Cup Division race car driver. In 1996 Bodine drove for Plaintiff GEB's racing team. At that time, Bodine was an officer and the sole shareholder of GEB. GEB, a Delaware corporation, owned a NASCAR Super Truck race truck driven by David Rezendes in addition to Bodine's Winston Cup race car. Defendant QVC promotes and sells products through cable television shopping programs broadcast throughout the United States.

On February 14, 1996, GEB and QVC entered into a written contract entitled "Sponsorship Agreement" ("Agreement") that established a relationship whereby QVC would sponsor both of GEB's NASCAR racing teams. QVC was to be the primary sponsor of the Winston Cup race car team for the 1996 and 1997 seasons. In addition, QVC was to act as the primary sponsor of the Super Truck team for the 1996 season. Under the terms of the Agreement, QVC would pay a set base fee and certain "bounty payments" that were based on the impact the NASCAR teams had on QVC's business. "Bounty payments" were generated through new member mentions and pre-prepared packets that were to be handed out at race tracks and mailed to people listed in racing data bases. New member mentions consisted of accounts opened by customers who mentioned QVC's NASCAR sponsorship or a

related term when they opened their account. The pre-prepared packets contained pre-determined QVC customer identification numbers used to identify and track the purchasing activity of new QVC customers recruited through these packets. The gravamen of this case is the parties' disagreement about the validity, accuracy, and appropriateness of how these bounty payments were calculated. The Agreement also provided that revenue would be generated through secondary sponsors chosen by QVC and approved by GEB. QVC and GEB were to split equally revenue from the secondary sponsors. In exchange, QVC would be entitled to the advertising and merchandising rights that are customary with such sponsorships.

In the late summer of 1996, Bill Doucette, a GEB officer, and Joseph Gecinger, GEB's independent financial consultant, notified QVC that GEB was running out of money and would have to cease operation without additional funding. In response, GEB and QVC executed a written "Amendment to the Sponsorship Agreement" ("Amendment") on October 10, 1996. The Amendment provided the following: QVC would advance 1997 base payments to GEB; GEB would have sole discretion to choose secondary sponsors; any revenue from secondary sponsors would go directly to GEB; QVC would no longer sponsor the Super Truck; and GES and QVC would mutually release each other from claims originating prior to the Amendment.

In the summer of 1997 GEB sold its Winston Cup racing team to Mattei Motorsports, LLC, assigning its rights and privileges under the Agreement and the Amendment to Mattei. Thereafter, QVC continued making bounty payments which were sent to GEB and subsequently forwarded to Mattei. Mattei negotiated the bank drafts without reservation. QVC sent a letter on December 11, 1998, concluding the relationship and notifying Mattei that QVC considered its obligations under the Agreement and Amendment completed.

## DISCUSSION

Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the burden of persuasion on the relevant issues. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for 'trial. *See* Fed.R.Civ.P. 56(e); *see also Cray Communications, Inc. v. Novatel Computer Sys., Inc.,* 33 F.3d 390, 393–94 (4th Cir.1994) (moving party on summary judgment motion can simply argue the absence of evidence by which the non-movant can prove her case). In considering the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. However, "[t]he mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

### A. *Plaintiff Bodine's Claims*

■ Defendant first asserts that Bodine is not a proper party in this action because he is not a party to the Agreement or the Amendment allegedly breached, nor is he a third-party beneficiary of either contract. Plaintiffs do not respond to this argument. The court agrees with Defendant and will dismiss Bodine's claims.

■ Under North Carolina law, a plaintiff must show that he is a party to a contract or third-party beneficiary of the contract to bring a claim for breach of

contract. *Holshouser v. Shaner Hotel Group*, 134 N.C.App. 391, 518 S.E.2d 17 (1999), *aff'd*, 351 N.C. 330, 524 S.E.2d 568 (2000). Bodine is neither. The Agreement explicitly states that it was made and entered by and between QVC as sponsor and GEB as the racing team. The contract noted that GEB owned and operated a NASCAR Winston Cup race team and a NASCAR Super Truck race team under the trade name of Geoff Bodine Racing. (Agreement p. 1). New member mention revenue includes customers who mention "Geoff Bodine" as a reason for their enrollment. (Agreement p. 4). The contract uses the generic term "driver" when referring to racing uniforms and the right to use names, photographs, likenesses, voices, and signatures. (Agreement pp. 7, 8). These sections do not mention Bodine by name.

The section regarding drivers specifically requires that GEB employ Bodine as the NASCAR Winston Cup driver. Neither the Agreement nor the Amendment dictates any terms of Bodine's employment by GEB. Further, the Agreement contemplates the inability of Bodine to race and provides that the contract will still be enforceable if another driver is substituted who is acceptable to both parties. The Agreement provides for driver appearances and an additional appearance by Bodine. (Agreement p. 9). GEB also agreed that Bodine and any other potential driver would conduct himself or herself in a manner conducive to the best interests of QVC and GEB, otherwise QVC could request the driver's dismissal. (Agreement p. 11). These are the only provisions of the Agreement that explicitly mention Bodine's involvement. Bodine is promised no benefit under either the Agreement or the Amendment and is not referred to as a party in either document. Bodine was the only person who signed the Agreement for GEB. Bodine executed the Agreement in his capacity as president of GEB, not as an individual party to the contract. Doucette signed the Amendment in his official capacity as the new president of GEB. Despite Bodine's advancement of personal funds to GEB when it was having financial problems, he was not a party to either contract between GEB and QVC.

Bodine also was not a third-party beneficiary of the Agreement or Amendment. North Carolina law requires a plaintiff to show "(1) that a contract exists between two persons or entities; (2) that the contract is valid and enforceable; and (3) that the contract was executed for the direct, and not incidental, benefit of the plaintiff" to establish that he is a third-party beneficiary. *Holshouser*, 134 N.C.App. at 399–400, 518 S.E.2d at 25. It is not sufficient that the contract benefits the plaintiff "if, when the contract was made, the contracting parties did not intend it to benefit the plaintiff directly." *Id.* at 400, 518 S.E.2d at 25. The language of the Agreement and Amendment clearly indicates that QVC and GEB did not intend to benefit Bodine directly. Accordingly, Bodine was not a third-party beneficiary of the Agreement or Amendment. Because Bodine was not a party to either contract or a third-party beneficiary, he cannot state a claim against QVC based on breach of contract, and his claims will be dismissed.

B. *Enforceability of Amendment*

QVC and GEB entered an Amendment to their Agreement on October 10, 1996. The Amendment included a release of all claims GEB had against QVC as of that date as well as a release of all claims QVC had against GEB as of that date. The Amendment also provided GEB with an accelerated payment of $800,000.00 of the base fees due in 1997. Additionally, QVC relinquished its right to fifty per cent (50%) of fees generated from secondary sponsors and gave GEB the right to choose these sponsors subject to QVC's approval. Further, QVC would no longer be the sponsor for GEB's Super Truck team. These modifications constitute ample

consideration from QVC to GEB in exchange for its release of claims.

■ Plaintiffs argue that the Amendment is avoidable because they executed the Amendment under economic duress. (Pls.' Br. in Opp'n to Summ.J. pp. 14–17; Bodine Dep. pp. 122–23; Gecinger Dep. p. 100). The North Carolina Supreme Court established the standard for proving economic duress in *Rose v. Vulcan Materials Co.*, 282 N.C. 643, 194 S.E.2d 521 (1973). A plaintiff must show: (1) a threatened breach that the promised performance will not be received and that breach will result in irreparable injury; (2) the threat is effective because of economic power not derived from the contract itself; (3) the threatened party could not enter into a contract with a third party replacing the threatening party, *i.e.*, the party could not obtain the "goods" from another source of supply; and (4) there is no immediate legal remedy available. *Id.* at 665–66, 194 S.E.2d at 536–37. Although GEB and QVC did not agree on the amount due under the contract as "bounty payments" and GEB made it clear that they would not be able to sustain the racing team without additional funding, GEB did not execute the Amendment under economic duress.

QVC did not have economic power over GEB outside of the contract. QVC was not the only business capable of NASCAR sponsorship. Despite Plaintiffs' argument that it is "ludicrous" to suggest that GEB could find other sponsors, it had done just that during the 1993 racing season. (Gecinger Dep. 17–18; Bodine Dep. 19–20). Not only could GEB have found secondary sponsors, it also had the right to terminate the Agreement with QVC with seven days' notice, and could have then found an alternate primary sponsor. (Agreement Section IV p. 7). QVC was not the "sole supplier" in the market of race team sponsors. Accordingly, because GEB did not execute the Amendment under economic duress, it is enforceable, and GEB has released QVC from any claims arising before the date of the Amendment.

## C. Unfair and Deceptive Trade Practices

■ Plaintiffs contend that their allegations of QVC's undisclosed practice of prequalifying potential customers at race tracks, QVC's knowing use of a materially flawed intake question posed to new customers, QVC's intentional misrepresentation of its household policy, QVC's refusal to ask new customers whether the NASCAR sponsorship was a factor of enrollment, and QVC's disregard of internal information regarding the true impact of the sponsorship at a time when it knew GEB was in financial trouble establish a *prima facie* case under North Carolina's Unfair and Deceptive Trade Practices Act. N.C.Gen.Stat. § 75–1.1.

■ To prevail on an unfair and deceptive trade practices claim under North Carolina law, a plaintiff must show (1) that the defendant committed an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) that plaintiff was injured as a result. *Computer Decisions, Inc. v. Rouse Office Mgmt. of North Carolina, Inc.*, 124 N.C.App. 383, 389, 477 S.E.2d 262, 266 (1996). A practice is unfair if "it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumer." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). A mere breach of contract, even if intentional, does not amount to an unfair or deceptive trade practice. Plaintiffs must show substantial aggravating circumstances. *Computer Decisions, Inc.*, 124 N.C.App. at 390, 477 S.E.2d at 266; *see also Canady v. Crestar Mortgage Corp.*, 109 F.3d 969, 975 (4th Cir.1997). Plaintiffs in this case do not present or forecast any evidence that would show substantial aggravating circumstances. Plaintiffs do not raise an issue of fact beyond whether Defendant intentionally breached the Amendment. Accordingly, Plaintiffs' unfair and deceptive trade practices claims will be dismissed.

## D. *Breach of Contract*

 Plaintiff GEB has raised a factual issue regarding QVC's alleged breach of contract that must be decided by a jury. Under the October 10, 1996, Amendment to the Agreement, QVC was required to determine the number of "new QVC Customers who established account and identified QVC's NASCAR racing sponsorship in so doing" by "tabulating, at least monthly, the number of such new Customers who mentioned QVC's NASCAR racing sponsorship ... during their initial enrollment interview." Further, QVC was required to "explore other means which may, in QVC's discretion, subsequently be developed to accurately identify and measure the number of new QVC Customers who identified QVC's sponsorship of GEB as a factor in their enrollment." QVC was additionally required to "exercise reasonable efforts to review and refine its methods to accurately identify and measure the number of new QVC Customers who identified QVC's sponsorship of GEB as a factor in their enrollment." (Amendment ¶ 9).

Taken in the light most favorable to Plaintiffs, GEB raises genuine issues of material fact regarding QVC's performance under the Amendment. Internal QVC documents regarding informational problems (Pls.' Exs. 5, 9; QVC Doc. # 1493–94), internal QVC documents showing various determinations of the sponsorship's impact on customers (Pls.' Ex. 19, QVC Doc. # 023, 024, 1072, 1073, 1182, 1241, 1304), and documents questioning QVC's methodological approach (Pls.' Ex. 15), all support the possibility that QVC did not adequately perform under the Amendment. In light of this evidence, a jury must decide if QVC adequately performed under the Amendment, and summary judgment on this claim will be denied.

## E. *Accord and Satisfaction/Waiver*

 Defendant contends that GEB accepted payments that were less than GEB believed they should have been and therefore QVC is not liable for breach of contract pursuant to the defense of accord and satisfaction. Under North Carolina law, for a defendant to successfully defend on the basis of accord and satisfaction, "there must have been a negotiation or agreement between the parties concerning payment or acceptance of less than the full amount owed." *Bromhal v. Stott,* 116 N.C.App. 250, 254, 447 S.E.2d 481, 484 (1994). The existence of accord and satisfaction is a question of law if the only reasonable inference is existence or non-existence; usually it is a question of fact for the jury. *Fallston Finishing, Inc. v. First Un. Nat'l Bank,* 76 N.C.App. 347, 360, 333 S.E.2d 321, 329 (1985). In this case, there is a material question of fact regarding whether GEB and QVC negotiated or agreed that the payments from QVC were in full payment of a disputed amount. (Defs.' Exs. F, G); *see also Futrelle v. Duke Univ.,* 127 N.C.App. 244, 250, 488 S.E.2d 635, 640 (1997) (finding accord and satisfaction where undisputed facts showed defendant's intent that check was final payment in resolving dispute and plaintiff understood defendant's intent). Accordingly, this issue must be decided by a jury.

 Defendant also argues that under *Wheeler v. Wheeler,* the defense of waiver bars Plaintiffs' claims. 299 N.C. 633, 263 S.E.2d 763 (1980). *Wheeler* sets out the following standard for the application of waiver: (1) the waiving party is the innocent or non-breaching party, (2) the breach does not involve a total repudiation of the contract so that the non-breaching party continues to receive some of the bargained-for consideration, (3) the innocent party is aware of the breach, and (4) the innocent party intentionally waives his right to excuse or repudiate his own performance by continuing to perform or accept the partial performance of the breaching party. *Id.* at 639, 263 S.E.2d at 766–67. "There can be no waiver unless so intended by one party.... Intent is an operation of the mind and should be proven and

found as fact and is rarely to be inferred as a matter of law." *Harris & Harris Constr. Co. v. Crain & Denbo, Inc.,* 256 N.C. 110, 119, 123 S.E.2d 590, 596 (1962). In May 1997, Gecinger sent a letter to George Endler, business counselor for QVC, stating that GEB accepted a check as *partial* payment and emphasizing that GEB *still* believed that there were deficiencies in QVC's reporting/survey system. (Defs.' Ex. G). This letter indicates that GEB did *not* intend to waive their right to additional payments. Because there are factual disputes regarding GEB's intent, the issue of waiver must also be decided by a jury.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment will be granted with respect to Plaintiff Bodine's claims, Plaintiff GEB's unfair and deceptive trade practices claim, and Plaintiff GEB's breach of contract claim for the period prior to the October 10, 1996, Amendment. Defendant's motion for summary judgment with respect to Plaintiff GEB's breach of contract claim relating to the period after the Amendment will be denied.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.