An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-951

Filed 17 September 2025

Anson County, No. 22CVS134

WALLACE & WALLACE PROPERTIES, LLC, Plaintiff,

v.

AQE SERVICES, LLC, and SOUTHERN RESTORATION & CONSTRUCTION, INC., Defendants.

Appeal by plaintiff from order entered 20 January 2023 by Judge Dawn M. Layton in Anson County Superior Court. Heard in the Court of Appeals 1 May 2024.

*Blanco Tackabery & Matamoros, PA, by Henry O. Hilston and Chad A. Archer, for plaintiff-appellant.*

*Essex Richards, PA, by David R. DiMatteo and John C. Woodman, for defendant-appellee Southern Restoration & Construction, Inc.*

GORE, Judge.

Plaintiff, Wallace & Wallace Properties, LLC, appeals the trial court's order granting defendant, Southern Restoration & Construction, Inc.'s ("SRC" or "defendant"), Rule 12(b)(6) motion to dismiss. Upon review of the briefs and the record, we affirm.

**I.**

Plaintiff purchased a commercial building property with the goal of leasing units to commercial tenants. Prior to leasing the building, plaintiff sought out AQE Services, LLC ("AQE") for an estimate on necessary roof repairs. AQE provided an estimate on 12 December 2016, to repair the roof in the amount of $48,500.00. Plaintiff agreed to the estimate and signed the contract between itself and AQE. AQE began repairs on the roof by removing portions of the roof. Plaintiff asserts AQE's "unskillful removal of portions of the roof damaged the property, its composite parts, and [plaintiff's] personal property." The roof was not completed according to the contract and remains unrepaired.

Plaintiff alleges that AQE either assigned the contract to defendant or defendant "obtained a security interest in AQE's account receivables, including the contract" in exchange for defendant providing labor, services, and materials. Plaintiff alleges that AQE "inflated the value of the contract through forgery" by changing the estimate of the contract from $48,500.00 to $148,500.00. On 3 October 2018, defendant filed a claim of lien against the property in the amount of $50,000.00 and sought payment from AQE, but also named plaintiff as the property owner. The lien states that AQE is the hiring party "with whom the Claimant contracted for the furnishing of labor or materials." Plaintiff alleged the lien sought to enforce the forged document and that AQE communicated with defendant to acknowledge the document was inflated and fraudulent.

On 26 March 2020, defendant filed a lawsuit to enforce the lien by naming AQE and plaintiff as the defendants. Plaintiff acknowledges it does not know the exact relationship between AQE and defendant, whether there is an assignment or whether there was a factoring transaction. Plaintiff alleges defendant did not provide the materials, labor, or other services as stated in the lien. Defendant filed a voluntary dismissal of plaintiff with the first lawsuit and "conceded" the contract price was inflated and a fraudulent modification by AQE.

Plaintiff filed a complaint and an amended complaint against defendant, AQE, and an insurance group. Plaintiff asserted the following claims against defendant in its amended complaint: (1) breach of contract, (2) negligence and/or breach of the implied covenant of workmanlike quality, (3) breach of good faith and fair dealing, (4) malicious prosecution, (5) abuse of process, (6) attempting to obtain property by false pretenses, (7) civil conspiracy, and (8) unfair and deceptive trade practices. Defendant filed a Rule 12(b)(6) motion to dismiss all claims against it, and the trial court entered an order granting the Rule 12(b)(6) motion. Defendant filed a notice of appeal specifying appeal of the Rule 12(b)(6) order after the final party, AQE, was later voluntarily dismissed with prejudice. Plaintiff appeals of right pursuant to N.C.G.S. § 7A-27(b)(1).

**II.**

Plaintiff seeks review of every claim, except the claim for breach of good faith and fair dealing, that was dismissed by the Rule 12(b)(6) order granting defendant's

motion to dismiss. We review orders granting Rule 12(b)(6) motions to dismiss de novo. *Taylor v. Bank of Am., N.A.*, 382 N.C. 677, 679 (2022). "The well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted." *Wray v. City of Greensboro*, 370 N.C. 41, 46 (2017) (cleaned up). "A complaint should not be dismissed under Rule 12(b)(6) unless it affirmatively appears that plaintiff is entitled to no relief under any state of facts which could be presented in support of the claim." *Id.* "Every reasonable inference must be drawn in favor of plaintiff." *Locklear v. Lanuti*, 176 N.C. App. 380, 387 (2006) (cleaned up).

However, "when the complaint on its face reveals that no law supports the claim, reveals an absence of facts sufficient to make a valid claim, or discloses facts that necessarily defeat the claim, dismissal is proper." *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 206 (2016) (citation omitted).

> When documents are attached to and incorporated into a complaint, they become part of the complaint and may be considered in connection with a Rule 12(b)(6) motion without converting it into a motion for summary judgment. Moreover, although it is true that the allegations of the plaintiff's complaint are liberally construed and generally treated as true, the trial court can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint. Furthermore, the trial court is not required . . . to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.
> When reviewing pleadings with documentary attachments on a Rule 12(b)(6) motion, the actual content of the documents control, not the allegations contained in the pleadings.

*Id.* (cleaned up). Accordingly, we consider plaintiff's amended complaint and all the attachments to the complaint de novo.

## A. Breach of Contract and Negligence/Breach of the Implied Covenant of Workmanlike Quality

Plaintiff argues the trial court erred by dismissing its claim for breach of contract against SRC. Despite the liberal reading required for review of a complaint dismissed through a Rule 12(b)(6) motion, the contradictions present within the complaint's allegations and documents attached to the complaint negate this breach of contract claim.

Plaintiff must demonstrate in an initial breach of contract claim that a valid contract exists between the parties and a "breach of the terms of [that] contract." *McLamb v. T.P. Inc.*, 173 N.C. App. 586, 588 (2005). Plaintiff made the following assertions as to a contract between SRC and itself:

13. A true and accurate copy of the Contract is attached as Exhibit A and incorporated herein by reference.
. . .

16. After [plaintiff] indicated [its] acceptance of the terms of the Contract, AQE then began work on installing the roof, which required AQE to remove portions of the roof for replacement.

17. AQE's unskillful removal of portions of the roof damaged the Property, its composite parts, and [plaintiff]'s personal property.

18. AQE did not promptly complete the agreed-upon work contemplated under the terms of the Contract, such that the job remains in progress presently.

19. Upon information and belief, at some point subsequent to the execution of the Contract, SRC obtained an ownership or security

interest in AQE's accounts receivable, including the Contract, by providing materials, labor, services, and other benefits to AQE and/or AQE assigned and SRC assumed the Contract (the "Transfer").
. . .

25. On or about October 3, 2018, SRC filed a claim of Lien (the "Lien") against the Property in the amount of $50,000.00.
. . .

27. The Lien states that it covers labor and materials provided to [plaintiff] by SRC after AQE "hired" SRC to provide labor and materials.
. . .

33. While the precise nature of the relationship between AQE and SRC is unknown, upon information and belief, SRC has, at times, claimed to have purchased all or some of AQE's receivables, . . . , in a factoring transaction, pursuant to which SRC would provide short-term funding to AQE in exchange for the contract price of the purchased receivables in the future, while at other times describing the Transaction as more akin to an assignment and assumption agreement.
. . .

38. Despite the job remaining incomplete, . . . principal of AQE, continues to assure [plaintiff] that he/AQE will complete the work.

A review of these allegations, alongside the contract and the lien, reveal contradictions as to SRC's relationship with plaintiff. Plaintiff correctly asserts that an assignment of the contract by AQE to SRC would give plaintiff the right to bring a breach of contract claim against SRC. *See Rose v. Vulcan Materials Co.*, 282 N.C. 643, 661 (1973), *superseded by statute on other grounds*, N.C.G.S. § 24-5(a), *as recognized in Cleveland Const., Inc. v. Ellis-Don Const. Inc.*, 210 N.C. App. 522, 537 (2011). However, the allegations and the exhibits do not demonstrate any assignment between AQE and SRC. Rather the lien, which is considered incorporated into the

amended complaint for purposes of appellate review, suggests a separate contract existed between SRC and AQE. In fact, the claim states, "Hiring Party: Party with whom the Claimant [SRC] contracted for the furnishing of labor or materials: AQE Services, LLC." Therefore, despite a liberal construing of plaintiff's allegations, these exhibits that were attached to the amended complaint contradict plaintiff's allegations. Pursuant to *Moch*, we rely on the content of the exhibits because "the actual content of the documents control, not the allegations contained in the pleadings." 251 N.C. App. at 206. Because plaintiff fails to allege a valid contract exists between itself and defendant SRC, the trial court did not err by granting the Rule 12(b)(6) motion to dismiss.

Additionally, plaintiff asserted a "hybrid" claim for negligence and breach of the implied covenant of workmanlike quality against defendant. Plaintiff relies upon its breach of contract claim argument, alleging a contract between it and defendant, to further support a claim for breach of the implied covenant of workmanlike quality.

> The law recognizes an implied warranty that the contractor . . . will use the customary standard of skill and care based upon the particular industry, location, and timeframe in which the construction occurs. When pleading this claim, [the] plaintiff's pleading should allege wherein the workmanship was faulty or the material furnished . . . was not such as the contract required.

*Dan King Plumbing Heating & Air Conditioning, LLC v. Harrison*, 281 N.C. App. 312, 332 (2022) (internal quotation marks and citations omitted). However, having determined the amended complaint failed to properly allege a contract between

plaintiff and defendant, this claim likewise fails. Plaintiff did not include allegations as to how the "workmanship was faulty" or the materials did not comply with the contract. Therefore, the trial court did not err by dismissing the claim for breach of the implied covenant of workmanlike quality against defendant.

Further, plaintiff's minimal claim for negligence was insufficiently pled. A claim for negligence requires proof: "(1) that the defendant owed . . . a duty of care; (2) that the conduct of the defendant breached that duty; (3) that the breach actually and proximately caused the plaintiff's injury; and (4) that the plaintiff sustained damages as a result of the injury." *Holshouser v. Shaner Hotel Grp. Props. One Ltd. P'ship*, 134 N.C. App. 391, 394 (1999). The amended complaint relies upon the assignment allegation that defendant was an assignee of AQE and therefore had a duty it breached in the Contract. Beyond this, plaintiff only stated that defendant acted negligently by not completing the work in a "timely manner." Plaintiff failed to allege each element of negligence. Therefore, we determine the trial court did not err by granting the Rule 12(b)(6) motion to dismiss the negligence and breach of the implied covenant of workmanlike quality claims.

### B.    Malicious Prosecution

Next, plaintiff argues the trial court erred by granting the Rule 12(b)(6) motion to dismiss its claim for malicious prosecution against defendant. To withstand a Rule 12(b)(6) motion for a malicious prosecution claim based upon an underlying civil case, plaintiff must prove the following five elements: "(1) defendant initiated the earlier

proceeding; (2) malice on the part of defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; . . . (4) termination of the earlier proceeding in favor of the plaintiff;" and (5) special damages. *Fox v. City of Greensboro*, 279 N.C. App. 301, 314 (2021) (internal quotation marks omitted). The special damages element "resulting from a prior lawsuit filed against [it] is an essential, substantive element of the claim." *Stikeleather v. Willard*, 83 N.C. App. 50, 51 (1986) (internal quotation marks and citation omitted). Special damages include: "substantial interference with plaintiff's person or property causing execution or an injunction to be issued, a receiver to be appointed, plaintiff's property to be attached or causing plaintiff to be wrongfully committed to a mental institution." *Id.*

In the present case, SRC's prior lawsuit was to enforce a lien on plaintiff's property. Plaintiff has failed to prove any special damages resulting from the prior civil action and therefore, we do not consider the other elements of malicious prosecution because the failure to prove special damages necessarily defeats this claim. Therefore, we determine the trial court did not err by granting the Rule 12(b)(6) motion to dismiss the malicious prosecution claim against defendant.

### C. Abuse of Process

Plaintiff also brought an abuse of process claim against defendant. "Abuse of process is the misapplication of civil or criminal process to accomplish some purpose not warranted or commanded by the process." *Moch*, 251 N.C. App. at 210. Plaintiff may overcome a Rule 12(b)(6) motion by proving the following two elements: (1)

"defendant had an ulterior motive to achieve a collateral purpose not within the normal scope of the process used, and (2) defendant committed some act that is a malicious misuse or misapplication of that process *after issuance* to accomplish some purpose not warranted or commanded by the writ." *Id.* "Our courts have repeatedly upheld dismissal of an abuse of process claim when there are no allegations that a defendant misused process *after* proceedings had been initiated." *Chidnese v. Chidnese*, 210 N.C. App. 299, 311 (2011). In other words, the plaintiff must "allege that defendant committed [a] willful act not proper in the regular course of the proceeding once [defendant] initiated the suit" to forgo a Rule 12(b)(6) dismissal. *Id.* at 311–12.

In the present case, plaintiff's allegations against defendant for the abuse of process claim all relate to events prior to the initiation of the lawsuit. Plaintiff argues that defendant relied upon a forged contract that inflated the contract prices from $48,500 to $148,500 to initiate the lien, and that plaintiff knew or should have known the document was forged prior to the lawsuit. Additionally, plaintiff alleges defendant did not supply the labor and materials it claimed to have supplied prior to the lawsuit. On this basis, plaintiff argues it properly alleged an abuse of process claim. However, as previously stated, plaintiff must allege willful acts committed after the filing of the lawsuit and during the "course of the proceeding." *Id.* Because plaintiff's allegations are prior to the initiation of the lawsuit, the trial court did not err by granting the Rule 12(b)(6) motion to dismiss the abuse of process claim.

**D.      Attempt to Obtain Property by False Pretenses**

Plaintiff also brought a claim for attempt to obtain property by false pretenses against defendant.  Section 1-538.2 allows plaintiff to bring this civil action against defendant even if no criminal action is sought by the State or conviction obtained.  N.C.G.S. § 1-538.2 (2023).  Specifically, section 1-538.2 states that a party may bring an action if the person or entity "commit[ted] an act punishable under section 14-100."  *Id.* (cleaned up).  Section 14-100 is the criminal statute for "obtain[ing] or attempt[ing] to obtain from any person . . . money, goods, property, services, chose in action, or other thing of value."  N.C.G.S. § 14-100 (2023).  To sustain a claim for attempt to obtain property by false pretenses, plaintiff must properly allege: "(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another."  *State v. Parker*, 354 N.C. 268, 284 (2001) (citation omitted).  "If one falsely and with fraudulent design represents to another that something material . . . is true, when the same is not true, and it is calculated to mislead, and does mislead, this representation is a false pretense."  *Id.*

In the present case, plaintiff alleged in the amended complaint that defendant "knowingly and designedly, with an intent to defraud [plaintiff], attempted to obtain $50,000.00 from [plaintiff] by filing the baseless lien and lawsuit to enforce the Lien."  Plaintiff alleged that the forged contract was used by defendant to obtain plaintiff's

money. What plaintiff does not allege is whether plaintiff, or anyone else for that matter, was in fact deceived by the forged contract. Additional facts included in the amended complaint contradict these allegations, such as the allegation that it was AQE that inflated the forged document, that AQE represented to defendant the contract contained an inflated value, and that defendant voluntarily dismissed the lawsuit upon its concession that the forged document was in fact a "fraudulent modification of the Contract by AQE." We do not see any fact or allegation that any party was deceived by this forged document, other than possibly defendant (plaintiff alleged defendant may have purchased AQE's receivables in a factoring transaction in exchange for defendant giving AQE a short-term loan). Therefore, the trial court did not err by granting the Rule 12(b)(6) motion to dismiss the claim for attempt to obtain property by false pretenses.

### E.    Civil Conspiracy

Plaintiff also brought a civil conspiracy claim against defendant. "Civil conspiracy is a dependent claim. Only where there is an underlying claim for unlawful conduct can a plaintiff state a claim for civil conspiracy by also alleging the agreement of two or more parties to carry out the conduct and injury resulting from that agreement." *BDM Investments v. Lenhil, Inc.*, 264 N.C. App. 282, 300 (2019) (internal quotation marks and citations omitted).

Plaintiff relies upon the underlying claims of malicious prosecution, abuse of process, and attempt to obtain property by false pretenses to support its civil

conspiracy claim. Because we have determined the trial court did not err by dismissing those claims, plaintiff's claim for civil conspiracy also fails under the Rule 12(b)(6) motion to dismiss standard. The trial court did not err by granting the Rule 12(b)(6) motion to dismiss the claim for civil conspiracy.

### F.    N.C. Unfair and Deceptive Trade Practices

Plaintiff's last claim against defendant is for engaging in unfair and deceptive trade practices ("UDTP") pursuant to section 75-1.1(a). To bring a UDTP claim, plaintiff must prove: "(1) an unfair or deceptive trade practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiff[ ]." *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68 (2000). In the amended complaint, plaintiff relied upon its claims of malicious prosecution, abuse of process, attempting to obtain property by false pretenses, and civil conspiracy to support the UDTP claim. Beyond these claims, plaintiff did not state any further allegations as to its UDTP claim. Because we determined those claims were insufficiently pled, we must conclude plaintiff failed to sufficiently plead its UDTP claim. *See Krawiec v. Manly*, 370 N.C. 602, 613 (2018) (discussing how sole reliance upon other insufficiently pled claims in support of its UDTP claim, resulted in the dismissal of the UDTP claim). Therefore, the trial court did not err by granting the Rule 12(b)(6) motion to dismiss the UDTP claim.

### III.

For the foregoing reasons, the trial court did not err by granting the Rule

12(b)(6) motion to dismiss plaintiff's claims against defendant SRC.

AFFIRMED.

Judges HAMPSON and FLOOD concur.

Report per Rule 30(e).